TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN





NO. 03-

01-00362-CR







Carl Miller, Appellant



v.



The State of Texas, Appellee 







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 1010226, HONORABLE JON WISSER, JUDGE PRESIDING





 A jury convicted Carl Miller of murder. See Tex. Pen. Code Ann. §§ 21.11 (West
Supp. 2002). The court assessed sentence at thirty years in prison. By four points of error, appellant
contends that the evidence is legally insufficient to support the jury's rejection of his self-defense
claim, and that the court erred by denying his motions for directed verdict, for mistrial based on a
prosecutor's comment, and for new trial based on his being shackled in view of the jury. We will
affirm the judgment.


BACKGROUND


 Appellant admits that he killed Terry Burleson by stabbing him in the chest. The only
factual dispute at trial was whether appellant acted in self-defense.

 Appellant testified that he spent Saturday, August 18, 2000, making the rounds of
friends and family, saying his goodbyes before leaving for California the next day. He drank three
beers that afternoon. He went out that night around ten o'clock, looking to have a good time and say
more goodbyes. He had a beer and saw a friend who, around midnight, invited him to a club. 
Appellant followed him by car to the new club.

 On the way, appellant saw his friend's car outside the Aristocrat Club, so he stopped.
He did not have the five-dollar cover charge, so he waited for his friend outside. He chatted with
some young women outside the club. Burleson stepped up behind the young women and told
appellant that the women were with him; Burleson cursed at appellant, who told Burleson they were
not well-acquainted enough to justify such language. Burleson invited appellant to talk with him
around the corner. Appellant followed him and James Cleveland past appellant's truck, around the
corner, and onto a concrete slab behind the club. (Appellant told police after the altercation that
Cleveland followed him.) Appellant then removed his hat and placed it on the ground so he could
have enough light to clean his glasses in the dim light. He stepped between Burleson and Cleveland.

 Appellant said that Burleson kicked him twice in the chest and once in the leg,
knocking him backwards. He said a serious leg injury which required him to wear a leg brace
prevented him from running away. Appellant said that Cleveland was blocking his exit and may
have hit him. Appellant testified that he was not angry, but feared for his life, so he pulled a knife
and slashed at Burleson. Appellant stabbed Burleson in the chest, leaning into him and pushing the
blade in 2-3/4 inches deep, piercing an artery and part of the heart. Burleson and Cleveland
retreated, and appellant also walked back toward the front of the club. The stabbing killed Burleson.

 Robbie Davis, who dated Burleson in the 1980s and early 1990s, said that he was very
jealous and became physically violent when drinking. She said they were both members of the
motorcycle club, the Humping People, but she quit the club because of embarrassing and unsafe
situations that occurred when they were at functions. She said her having dated appellant in the
1960s had no effect on her testimony.

 Other witnesses agreed with her characterization of Burleson. Douglas Hurst,
appellant's former brother-in-law, testified that after the altercation he heard that Burleson was a
violent man. He knew appellant not to be violent, even when drunk. Glenn Crawford, appellant's
cousin, agreed with Hurst's characterization of Burleson, and added that he would stay away from
all of the motorcycle club members because of their reputation. Lee Arthur Thomas agreed that
Burleson had a reputation for drunken violence, but that he had only seen him get loud when drunk.

 Witnesses who saw appellant after the altercation confirmed that he was injured. 
Doctor Daniel Hart testified that appellant had swelling on the side of his face after his arrest. He
said the nurse's chart showed that appellant was still under the influence of alcohol more than four
hours after arrest. Austin Police Department detective Richard Faithful testified that he saw a scratch
on appellant's forehead and found a footprint on appellant's shorts. Although he did not see any
other injuries, he said appellant told him that he got kicked or hit in the knee, the wrist, and the head,
and that his midsection hurt.

 Other witnesses agreed with the broad outline of events appellant described, but
disagreed with particulars that bear on the critical element of appellant's state of mind.

 James Sullivan, then a security guard, witnessed part of the fight from his car. He
was driving by when he saw the altercation behind the bar beginning. He saw a man throw his hat
down and approach another who was already on the slab, ready to fight; Sullivan said that, although
the men were about the same height, the man who was waiting on the slab was much more muscular. 
He said it appeared that words were exchanged, then the man who was on the slab threw a punch
which missed, and the fight began. A third man was standing nearby; Sullivan never saw him
engage in the fight. Sullivan also said that there were many routes to get away from the location of
the fight. Upon seeing Sullivan, the men stopped the fight and the man who threw his hat down went
to pick it up. Sullivan proceeded to the intersection and, seeing a police car, flashed his headlights
to get the officer's attention.

 Noticing that no one had come to the street from the fight location, Sullivan backed
up and saw that the fight had resumed. He said that the more muscular man seemed to be landing
more punches, but that neither was backing away. Sullivan saw the man who had thrown the hat pull
something out of his pocket and slap at the other man with it. The other man hunched over, and the
third man ran to the muscular man, grabbed him, and took him away. The second man walked over,
picked up his hat, and walked away. The police arrived, and the third man came over and said his
friend had been stabbed.

 Police officers who responded to the scene testified. APD officer Jerry Sullivan
testified that the security guard (his brother) told him that three men were fighting behind the club. 
Officer Sullivan said appellant was walking without a limp, but did not see him try to run and did
not know whether he could run. Officer Sullivan admitted that a person could be kicked to death. 
APD officer Myecha Francis said Burleson had two stab wounds in the chest, one on his head, and
one on his arm. He was bleeding profusely and barely breathing. She did not detect any odor of
alcohol on his breath. APD officer William Mercado, who arrested appellant, said he did not notice
appellant limping, nor did he notice whether appellant's forehead was scratched. 

 Melinda Dawson testified that she was standing outside the Aristocrat just after
midnight. She said that, after appellant declined to pay the admission fee to the club, he and
Burleson got into an argument. She saw Burleson walk around the corner and appellant walk to a
car, but then walk on further down the street. She asked James Cleveland to go check on his friend
Burleson; this conflicted with her earlier statement to police in which she could not recall whether
Cleveland went around the corner before or after appellant. She said Burleson had been drinking,
but she did not know how much.

 Rod Selby, who was working the door of the Aristocrat, testified that appellant got
irate when they requested that he pay the five-dollar cover charge or step out of line. He testified that
he did not see Burleson intoxicated that night. He said that he and Burleson were members of the
Humping People and had spent a lot of time together; he testified that members would try to break
up fights involving other members or come to a fellow member's defense if necessary.

 James Cleveland also testified that he was a member of the motorcycle club with
Selby, Burleson, and other witnesses. He thought Burleson might have had two beers on the night
of the altercation. He said appellant got angry when Cleveland refused to buy some jewelry from
him. Appellant's mood did not improve after trying to get into the club. Cleveland then saw and
partly overheard appellant and Burleson having a conversation about some women; he saw Burleson
wave some money at appellant. Cleveland testified that he saw Burleson walk around the corner
followed by appellant. Cleveland followed them (he did not recall being asked to follow them) and
saw appellant swinging at Burleson and Burleson kicking appellant. Cleveland separated them after
seeing the police nearby, not realizing that Burleson had been stabbed. He said he did not otherwise
participate in the fight.


DISCUSSION


 Appellant raises four point of error. By two points, he challenges the evidentiary
support for the judgment. By the remaining two points, he challenges the court's refusal to grant a
mistrial or new trial despite his being forced to wear a leg restraint and despite the prosecutor
highlighting that restraint to the jury and commenting on the reason for it.


Sufficiency of the evidence

 Appellant raises two points of error that are related by their attacks on the evidence
to support findings on the elements of the offense. By his first point of error, appellant contends that
the evidence is legally insufficient to support the jury's verdict because he proved self-defense. By
his fourth point of error, he contends that the court erred by denying his motion for instructed verdict. 

 The elements of the offense and defense are critical to both reviews. A person
commits murder if he intentionally or knowingly causes the death of an individual or if, while
intending to cause serious bodily injury, he commits an act clearly dangerous to human life that
causes an individual's death. See Tex. Pen. Code Ann. § 19.01(b) (West 1994). The penal code
permits a person to use force against another when and to the degree that he reasonably believes that
the force is immediately necessary to protect himself against the other's use of unlawful force. See
id. § 9.31(a) (West Supp. 2002). The person is not justified in using force in response to verbal
provocation alone or if the person provoked the other's use of force (unless the initiator abandons
the encounter). Id. § 9.31(b). A person is justified in using deadly force to protect himself if he is
justified in using force and if a reasonable person in his position would not have retreated, when and
to the degree he reasonably believes the deadly force is immediately necessary to protect himself
against the other's use or attempted use of unlawful deadly force. See id. § 9.32.

 In reviewing the legal sufficiency of the evidence, "the relevant question is whether,
after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt." Jackson v.
Virginia, 443 U.S. 307, 319 (1979); accord Patrick v. State, 906 S.W.2d 481, 486 (Tex. Crim. App.
1995). In resolving whether the evidence supports the jury's rejection of the self-defense claim, we
look not to whether evidence refuted appellant's self-defense testimony, but whether, after viewing
all the evidence most favorably to the prosecution, any rational trier of fact could have found the
elements of murder beyond a reasonable doubt and found against appellant on the self-defense issue
beyond a reasonable doubt. See Saxton v. State, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). 
Evidence consistent with self-defense does not render the State's evidence insufficient because the
credibility determination of such evidence is solely within the jury's province and the jury is free to
accept or reject the defensive evidence. Id. A jury verdict of guilty is an implicit finding rejecting
the defendant's self-defense theory. Id.; Jenkins v. State, 740 S.W.2d 435, 438 (Tex. Crim. App.
1983).

 We review the denial of a motion for instructed verdict by the same standard used for
a challenge to the legal sufficiency of the evidence. See Youens v. State, 988 S.W.2d 404, 407 (Tex.
App.--Houston [1st Dist.] 1999, no pet.); see also Cook v. State, 858 S.W.2d 467, 470 (Tex. Crim.
App. 1993). 

 As set out above, appellant testified that he was being attacked by two men, that the
bigger, stronger Burleson kicked him in the chest and leg, that he was injured, that he feared for his
life, that he could not run away because of his injury, that he pulled the knife to defend himself, and
that he had no intent to kill Burleson. Other witnesses confirmed that Burleson was bigger, that he
was kicking appellant, that appellant was injured, and that a person can be killed by being kicked.

 There was also testimony that appellant followed Burleson to the site of the fight and
provoked the physical altercation by throwing his hat down and advancing toward Burleson. 
Appellant admitted that he walked past his truck on his way to meet Burleson behind the bar. 
Security guard Sullivan testified that the fight broke up momentarily, but resumed. There was
testimony that Cleveland did not participate in the fight. Although it is undisputed that Burleson
kicked appellant, there is no testimony that the blows necessarily required deadly force to resist. 
Appellant himself testified that he stabbed Burleson multiple times and that he leaned into him when
stabbing him in the chest. Murder does not require an intent to kill, but only commission of acts
clearly dangerous to human life with an intent to cause serious bodily injury.

 We conclude that the record as a whole shows that a rational jury could have rejected
appellant's self-defense claim and found the elements of murder. Evidence supports the jury's
verdict. We overrule points one and four.


Denial of motion for mistrial

 By point of error two, appellant contends that the court erred by denying his motion
for mistrial. We review the denial for an abuse of discretion. Trevino v. State, 991 S.W.2d 849, 851
(Tex. Crim. App. 1999). A mistrial is a device used to halt trial proceedings in extreme cases when
error is so prejudicial as to appear calculated to inflame the minds of the jury members. Moore v.
State, 882 S.W.2d 844, 847 (Tex. Crim. App. 1994). We must look at the particular facts of the
case. Hernandez v. State, 805 S.W.2d 409, 414 (Tex. Crim. App. 1990). The court can cure harm
and avert a mistrial by instructing the jury to disregard a question, argument, or evidence. Id.; see
also Ovalle v. State, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000). Also, where the same evidence
or argument is presented during trial without objection, the allowance of that evidence or argument
later is not reversible error. McFarland v. State, 845 S.W.2d 824, 840 (Tex. Crim. App. 1992).

 Appellant contends that the court should have granted his motion for mistrial based
on a comment made by Judy Shipway, the prosecutor. The following exchange occurred during
defense attorney Steve Orr's redirect examination of appellant:


Q. Okay. And did you tell me you had a shackle on your leg there?


A. Yes.


Q. You did?


A. Did I tell you I had a shackle?


Q. Yeah.


A. No.


Q. Okay. That's what I'm getting at. And you don't--you don't limp when you're
normally walking without that thing on your leg, do you, sir?


A. Somewhat. I try not to. I practice not limping.


Q. Okay. But you can't run with or without a shackle.


A. No.


Q. Okay. And you've been in jail this whole time, correct, sir?


A. Yes.


Q. Your bond was $80,000.


A. Yes.


Q. You couldn't make that, right?


A. No, I couldn't.


MS. SHIPWAY: Judge, I'm going to object. What is the relevance of that?


MR. ORR: It's already in evidence on some of the paperwork they put in,
Your Honor. I'd like the jury to know why he's got a shackle on
his leg.


MS. SHIPWAY: Well, he's got a shackle on his leg because he murdered a man.


THE COURT: We'll sustain the objection and ask the jurors to disregard the
State's last remark.


MR. ORR: And I move for a mistrial, Your Honor.


THE COURT: That request will be denied. But the jurors should disregard that
remark. We'll overrule the objection.


Q. (By Mr. Orr) Do you know whether it's normal practice, I guess, for people who
are on trial in jail to have a shackle on their leg?


A. I don't think so. I don't--I don't really know.


Q. You don't know?


THE COURT: Well, the record should reflect that it's the practice of every
inmate who's going to jury trial to have one of those devices
placed on him. Thank you.



 Appellant's argument ignores questions, testimony, and demonstrations already in
the record during the State's cross-examination of appellant:


 Q. And that videotape was made the same night of the murder, correct?


 A. Yes.


 Q. Would you agree with me that your memory of what--what had happened that
night was probably better back on the night that it happened that it is now?


 A. I can't say that because things happened so fast that night, and after being told
that I had just murdered someone, I was a little distraught. There might be a lot
of--a few things that's out of sync.



Later in the same cross-examination, the State asked permission to show the ankle restraint in order
to demonstrate to the jury a reason for appellant's limp in court apart from his motorcycle crash
injury; appellant had no objection.

 The prosecutor's comment before the jury in the guilt/innocence phase of a murder
trial that the appellant had "murdered a man" was improper. The court nevertheless alleviated any
harm by immediately instructing the jury to disregard the prosecutor's comment. After denying
appellant's motion for mistrial, the court reiterated the instruction to disregard. After further
questioning of appellant by appellant's counsel regarding the shackle, the court further diminished
the impact of the shackling and the comment by telling the jury that all inmates in his courtroom are
shackled. The court's actions rendered the prosecutor's comment harmless. We overrule point two.


Denial of new trial

 By point of error three, appellant complains that the court erred by denying his motion
for new trial. Appellant argued in his motion that forcing him to wear an ankle restraint and
allowing the prosecution to refer to it violated his constitutional right to due process and the
presumption of innocence. The record indicates that the court did not affirmatively overrule the
motion for new trial, but allowed it to be overruled by operation of law.

 Appellant failed to preserve this point by failing to present the motion for new trial
to the district court's attention after filing it. See Tex. R. App. P. 21.6. The presentment requirement
"means the record must show the movant for a new trial sustained the burden of actually delivering
the motion for new trial to the trial court or otherwise bringing the motion to the attention or actual
notice of the trial court." Carranza v. State, 960 S.W.2d 76, 79 (Tex. Crim. App. 1998) (applying
former Tex. R. App. P. 31(c)(1) (using essentially same language as current rule)); Coronado v.
State, 25 S.W.3d 806, 810 (Tex. App.--Waco 2000, pet ref'd). There is no indication in the record
that appellant presented this motion to the trial court after filing it. The error is not preserved.

 Even if he had presented the motion timely and the court had overruled it, we would
not reverse the conviction. We review the denial of a motion for new trial for an abuse of discretion. 
See Salazar v. State, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001). He did not complain on the
record about wearing the restraint. His counsel assented to the State showing the restraint to the jury
to demonstrate at least part of the reason he was limping in trial. His counsel asked him questions
about the effect the restraint had on his mobility. The court told the jury that appellant's wearing the
restraint was standard for jury trials. Appellant cannot wear the restraint during trial without
objection, assent to showing the restraint to the jury without objection, and affirmatively discuss
wearing the restraint before the jury, then gain reversal of the verdict by arguing for the first time
after trial that the restraint was unconstitutional. We find no abuse of discretion in denying the
motion under these circumstances. We overrule point three.


CONCLUSION


 Having overruled all of appellant's asserted errors, we affirm the judgment.



 

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, B. A. Smith and Yeakel

Affirmed

Filed: August 30, 2002

Do Not Publish