

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00504-CR

| | | |
|---|---|---|
| Donald Wayne Walker | § | From the 97th District Court |
| | § | of Montague County |
| | § | (2010-0000091M-CR) |
| v. | § | February 21, 2013 |
| | § | Opinion by Justice Dauphinot |
| The State of Texas | § | (nfp) |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS

By_____
Justice Lee Ann Dauphinot



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-11-00504-CR

DONALD WAYNE WALKER                                        APPELLANT

V.

THE STATE OF TEXAS                                                STATE

----------

FROM THE 97TH DISTRICT COURT OF MONTAGUE COUNTY

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Donald Wayne Walker of possessing pseudoephedrine with intent to manufacture methamphetamine and assessed his punishment at twenty years' confinement and a $5,000 fine. The trial court sentenced him accordingly, and he now appeals, challenging the sufficiency of the nonaccomplice evidence. Because we hold that the evidence is sufficient to support Appellant's conviction, we affirm the trial court's judgment.

---

[1]*See* Tex. R. App. P. 47.4.

On August 18, 2009, at around 12:35 p.m., City of Bowie Police Officer Chris Hughes arrived at 534 Hutchinson Street in Bowie to stake out the trailer house there in an attempt to locate Appellant, who had an outstanding warrant for his arrest. Hughes had received information that Appellant could be found at that address. Hughes saw a pickup truck at the residence; he believed that this truck belonged to Appellant's brother. After about ten or fifteen minutes, Hughes saw some people get into the truck. He also saw a man remove a white bag from the truck's bed and take the bag into the residence.

When the truck left the house, it went past Hughes, who recognized the driver as Appellant. Hughes called a patrol officer, who then conducted a traffic stop of the truck in order to execute the arrest warrant. In addition to Appellant, the truck had three passengers. One of them, Lisa Barnes, was also arrested on an outstanding warrant, and neither of the other two passengers had a driver's license, so the patrol officer decided to impound the vehicle.

Hughes was present at the inventory of the vehicle, during which the officers found a receipt for Sudafed tablets and an empty blister pack of Sudafed tablets. After the inventory, Hughes decided to return to the residence to conduct a "knock and talk."

Jason Zapata answered the door to Hughes's knock. While talking to Zapata, Hughes noticed a chemical smell coming from inside the residence; he associated this smell with the manufacture of methamphetamine. Hughes decided to secure the residence and had Zapata and Cory Bong, Zapata's girlfriend and the only other

3

person in the residence at the time, go outside. While inside the house, Hughes saw some Sudafed boxes and blister packs on the living room floor and lithium batteries in the bedroom.

A search warrant was obtained, and inside the house, officers found three cans of Prestone starter fluid, which contained ether; lithium batteries, one of which had the casing cut open and parts removed; 1280 Sudafed pills; plastic baggies; a digital scale; a piece of broken glass pipe with brown residue; two boxes of Equate Suphedrine and four punched blister packs; a gallon of Coleman camp fuel in a white Walmart bag (which Zapata told Hughes he had removed from the bed of the pickup); syringes that had been melted together; and an unknown liquid with a chemical smell contained in a coffee cup in a kitchen cabinet. That liquid was later determined to be methamphetamine.

Hughes also found at the residence an envelope addressed to Appellant at an address on Small Street and some photos of Appellant. Although Appellant and his former girlfriend had signed the lease for the residence, nothing else connecting him to the address was found inside the residence.

At trial, Bong testified for the State. She testified that on August 17, 2009, Zapata had offered to pay her for buying pseudoephedrine pills—$100 for each box—and that she had agreed. That evening, she and Zapata met up with Appellant and Barnes to go to Fort Worth and buy pseudoephedrine. On the morning of August 18, she, Zapata, Appellant, and Barnes went to several stores. At a Walgreen's, she and Zapata each bought a box of pseudoephedrine. At

4

another Walgreen's, Zapata bought another box. They then went to Walmart, where she and Zapata each bought two boxes. After making these purchases, the four returned to the residence, where Appellant said he lived. After an hour or two, Barnes and Appellant left to visit Barnes's children.

Bong further testified that her understanding was that Appellant would cook the methamphetamine and that she would be paid by Appellant or Zapata. She stated that she, Zapata, and Barnes purchased the pills and removed them from their packaging.

Appellant concedes that there was sufficient evidence that there were at least 300 Sudafed pills and at least three substances listed under health and safety code section 481.124(b)(3)(B) at the residence in question.[2] Appellant argues, however, that the State's entire case is built primarily around accomplice Bong's testimony. Appellant argues that it is Bong's testimony that established his possession and control of both the pseudoephedrine and the "subject premises and activities therein" and that the evidence is therefore insufficient to support his conviction.

The accomplice-witness rule is a statutorily imposed sufficiency review and is not derived from federal or state constitutional principles that define sufficiency

---

[2] *See* Tex. Health & Safety Code Ann. § 481.124(b)(3)(B) (West 2010) (providing in relevant part that intent to manufacture methamphetamine is presumed by the possession in one building of at least three hundred pseudoephedrine tablets and "at least three of the following categories of substances commonly used in the manufacture of methamphetamine: (i) *lithium* . . . ; . . . (iii) an organic solvent, including ethyl *ether* . . . ; [and] (iv) a petroleum distillate, including . . . *charcoal lighter fluid*") (emphasis added).

standards.[3]  The accomplice-witness rule, which is set out in Article 38.14 of the

code of criminal procedure, provides that

> [a] conviction cannot be had upon the testimony of an accomplice
> unless corroborated by other evidence tending to connect the
> defendant with the offense committed; and the corroboration is not
> sufficient if it merely shows the commission of the offense.[4]

When evaluating the sufficiency of corroboration evidence under the

accomplice-witness rule, we "eliminate the accomplice testimony from consideration

and then examine the remaining portions of the record to see if there is any

evidence that tends to connect the accused with the commission of the crime."[5]  To

meet the requirements of the rule, the corroborating evidence need not prove the

defendant's guilt beyond a reasonable doubt by itself.[6]  Nor is it necessary for the

corroborating evidence to directly link the accused to the commission of the

offense.[7]  Rather, the evidence must simply link the accused in some way to the

---

[3]*Cathey v. State*, 992 S.W.2d 460, 462–63 (Tex. Crim. App. 1999), *cert. denied*, 528 U.S. 1082 (2000).

[4]Tex. Code Crim. Proc. Ann. art. 38.14 (West 2005).

[5]*Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008) (quoting *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001)).

[6]*Id.*; *Trevino v. State*, 991 S.W.2d 849, 851 (Tex. Crim. App. 1999); *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994).

[7]*Cathey*, 992 S.W.2d at 462.

commission of the crime and show that "rational jurors could conclude that this evidence sufficiently tended to connect [the accused] to the offense."[8]

There is no set amount of nonaccomplice corroboration evidence that is required for sufficiency purposes; "[e]ach case must be judged on its own facts."[9] Circumstances that are apparently insignificant may constitute sufficient evidence of corroboration.[10]

Here, the evidence shows that Appellant was driving a pickup truck when he was arrested, and inside that pickup was a receipt for the purchase of tablets containing pseudoephedrine. Imprinted on the receipt was the location Haltom City, Texas, and the date of Appellant's arrest. Also present in the pickup were empty blister packs for the Sudafed. Additionally, Appellant was arrested soon after he left the house containing numerous items used in the manufacture of methamphetamine as well as methamphetamine in liquid form. There was evidence that Appellant had leased the house, and some items of his property were found inside the house. While it is true that the evidence shows joint possession of the trailer house, the evidence nonetheless is sufficient to corroborate Bong's testimony.[11] And, as Appellant concedes, Bong's testimony provided direct evidence of his knowing

---

[8]*Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009); *see McDuff v. State*, 939 S.W.2d 607 (Tex. Crim. App.), *cert. denied*, 522 U.S. 844 (1997).

[9]*Malone*, 253 S.W.3d at 257 (quoting *Gill*, 873 S.W.2d at 48).

[10]*See Trevino*, 991 S.W.2d at 852.

[11]*See Poindexter v. State*, 153 S.W.3d 402, 412 (Tex. Crim. App. 2005).

possession of the pseudoephedrine and of his intent to use it to manufacture methamphetamine.

Applying the appropriate standard of review, we hold that the evidence is sufficient to corroborate the accomplice testimony and, accordingly, sufficient to sustain the jury's verdict.  We overrule Appellant's sole point and affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, WALKER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  February 21, 2013

8