Carlos TREVINO, Appellant,

v.

The STATE of Texas.

No. 72851.

Court of Criminal Appeals of Texas,
En Banc.

May 12, 1999.

Richard E. Langlois, San Antonio, for appellant.

Mary Beth Welsh, Assist. DA, Edward F. Shaughnessy, Assist. DA, San Antonio, Matthew Paul, State's Atty., Austin, for the State.

## OPINION

KELLER, J. delivered the opinion of the Court, in which McCORMICK, P.J., and MANSFIELD, PRICE, HOLLAND, WOMACK, and KEASLER joined.

Appellant was convicted and sentenced to death for a capital murder committed in

June 1996. Tex. Penal Code § 19.03 and Tex. Code Crim. Proc. Art. 37.071.[1] Appeal is automatic to this Court. Tex. Const. Art. I, § 5; Art. 37.071. Appellant raises nineteen points of error. We will affirm.

■ In his first point of error, appellant argues the trial court erred in denying his motion for mistrial. Near the conclusion of jury selection, the State informed appellant of its discovery and intent to use incriminating DNA evidence. Appellant moved the trial court for mistrial on grounds that because of the state's tardy disclosure, he had lost the opportunity to examine the venire regarding DNA evidence and thereby had lost the intelligent use of his peremptory strikes. Appellant alleged that prior to jury selection, he had requested notice of all scientific evidence which the State anticipated introducing and had formulated his jury selection strategy on the State's representations, including the representation that they had not discovered any incriminating DNA evidence. Appellant's motion for mistrial was denied.

The State asserts that before jury selection, it had informed appellant that though they had not discovered any incriminating DNA evidence, DNA testing was being conducted and that results had at that point not been prejudicial. But according to the State, it also informed appellant that it was conducting further testing on an article of the victim's clothing. That appellant had this information is confirmed by his own arguments when he moved for mistrial. Citing *Smith v. State*, 676 S.W.2d 379 (Tex.Crim.App.1984), the State asserts that under these facts it is clear that appellant's decision not to examine the venire regarding DNA evidence was a strategic choice.

1. Unless otherwise indicated, references to articles will be to the Texas Code of Criminal Procedure.

2. Article 38.14 states:

■ Appellant frames his claim in terms of proper questions not allowed, but in fact no such questions were propounded. Therefore, we cannot accept this categorization of this issue. We must instead review the question as what in fact it was, i.e., a denial of a motion for mistrial. The denial of a motion of mistrial is reviewed under an abuse of discretion standard. *State v. Gonzalez*, 855 S.W.2d 692, 696 (Tex.Crim.App.1993).

In presenting his claim to the trial court, appellant's counsel admitted that the State had informed him before jury selection of its continuing DNA tests on the victim's clothing. Counsel admitted that since none of the DNA testing had been incriminating, he decided to "let it go." *Id.* Counsel's decision not to query the venire regarding DNA evidence was a strategic decision and the product of neither prosecutorial misconduct nor trial court error. Under these facts, we cannot hold that the trial court abused its discretion in denying appellant's motion. Appellant's first point of error is overruled.

■ In his second point appellant argues that the evidence was insufficient to corroborate accomplice witness testimony. Art. 38.14.[2] "The accomplice witness rule is satisfied if there is *some* non-accomplice evidence which *tends* to connect the accused to the commission of the offense alleged in the indictment." *Hernandez v. State*, 939 S.W.2d 173, 176 (Tex.Crim.App.1997)(emphasis in original). The non-accomplice evidence need not itself be sufficient to establish the accused's guilt beyond a reasonable doubt. *Id.* And, while the accused's mere presence at the scene of the crime is insufficient, by itself, to corroborate accomplice witness testimony, "evidence of such presence, coupled with other suspicious circumstances, may

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

tend to connect the accused to the offense." *Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex.Crim.App.1996).

◼ In his brief, appellant lists the evidence connecting him to the crime: (1) DNA evidence that did not exclude appellant as the source of a blood stain on the victim's panties, (2) appellant's fingerprints in the vehicle used to transport the victim to Espada Park, and (3) fiber evidence from appellant's pants found on the victim's clothes. While appellant concedes that this evidence connected him to the crime scene, he contends that there was no evidence that connected him to the murder or sexual assault of the victim. We disagree. While the fingerprint evidence may have merely established appellant's presence at the crime scene, the presence of appellant's blood[3] on the victim's panties and appellant's pant fibers on the victim's clothes tends to connect him to the crime itself. The logical inference from these two items of evidence is that appellant had intimate contact with the victim and may have suffered defensive wounds. In other contexts, we have observed that the presence of blood, linked in some way to the defendant, was some evidence tending to connect the defendant to the offense. *Dowthitt*, 931 S.W.2d at 244 (beer bottle with defendant's fingerprint and victim's blood on it); *Gosch v. State*, 829 S.W.2d 775, 781 (Tex.Crim.App.1991), *cert. denied*, 509 U.S. 922, 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993)(blood of victim's blood type found on the defendant's blue jeans). Although these cases involved finding the *victim's* blood on items belonging to the defendant, the connection is equally obvious when the *defendant's* blood is found on items belonging to the victim. While appellant observes that there were no semen deposits by him on the victim and that no

non-accomplice evidence connected him to the murder weapon, the absence of such "smoking gun" evidence does not somehow invalidate the evidence that does connect him to the offense. The combination of the three items listed above is more than sufficient to tend to connect appellant to the offense. As we have previously held, "[e]ven apparently insignificant incriminating circumstances may sometimes afford satisfactory evidence of corroboration." *Dowthitt*, 931 S.W.2d at 249 (citing *Munoz v. State*, 853 S.W.2d 558, 559 (Tex.Crim. App.1993)). Such is the case here. Appellant's second point of error is overruled.

◼ In his third, fourth and fifth points of error, appellant argues that the trial court erred in admitting various hearsay assertions made by Juan Gonzales. Specifically, appellant complains of Gonzales' assertion that when he told appellant that the police wanted to talk to him, appellant told him not to say anything to the police. This is the subject of appellant's third point of error. Gonzales also said that as the conspirators drove away from the scene of the crime, Santos Cervantes commented to appellant that it was cool how he (appellant) had snapped her neck and used the knife. This is the subject of appellant's fourth point of error. Gonzales said further that appellant responded to Cervantes' comment with the statement "I learned how to kill people in prison."[4] This is the subject of appellant's fifth point of error. We will address appellant's own statements first as they raise a different legal issue.

◼ Appellant argues that his own alleged statements were rank hearsay, not admissible under any hearsay exception. Tex.R. Evid. 801 *et seq.*[5] The State re-

---

3. The statistical analysis established that roughly only one in every 10,767 members of the southwestern Hispanic population has the particular DNA type found along with the victim's DNA on the panties.

4. The prepositional phrase "in prison" was deleted from Gonzales' testimony during the

guilt/innocence phase of trial but reintroduced during the punishment phase of trial.

5. That the trial court treated the statements as hearsay and ruled that they were exceptions to hearsay is not pertinent to our resolution of the issue, as the trial court's decision will be

sponds that appellant's statements were not hearsay but admissions by a party-opponent. Tex.R. Evid. 801(e)(2). The State correctly argues that Rule 801(e)(2)(A) plainly and unequivocally states that a criminal defendant's own statements, when being offered against him, are not hearsay. *See also Drone v. State,* 906 S.W.2d 608, 611 (Tex.App.—Austin 1995, pet. ref'd); *Cunningham v. State,* 846 S.W.2d 147 (Tex.App.—Austin 1993) *aff'd on other grounds,* 877 S.W.2d 310 (Tex.Crim.App.1994). This rule recognizes that the out-of-court statements of a party differ from the out-of-court statements of non-parties, and raise different evidentiary concerns. *See Bingham v. State,* 987 S.W.2d 54, at 56–57 (Tex.Crim. App.1999); *Bell v. State,* 877 S.W.2d 21, 25 (Tex.App.-Dallas 1994, pet. ref'd). A party's own statements are not hearsay and they are admissible on the logic that a party is estopped from challenging the fundamental reliability or trustworthiness of his own statements. *Id.* 55 STEVEN GOODE, OLIN GUY WELLBORN III & M. MICHAEL SHARLOT, GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 801.7 (Texas Practice 1993). Though our cases have sometimes failed to recognize this aspect of a party's own statement, we here disavow any precedent indicating that the statement of a party, when being offered against him, is hearsay. *E.g., Green v. State,* 840 S.W.2d 394, 411–412 (Tex.Crim. App.1992); *Bryan v. State,* 837 S.W.2d 637 (Tex.Crim.App.1992) *and compare Davis v. State,* 961 S.W.2d 156, 161 (Tex.Crim.App.1998)(Womack J. concurring); *Banks v. State,* 643 S.W.2d 129, 134 (Tex.Crim.App.1982). And we note that party admissions, unlike statements against interest, need not be against the interests of the party when made; in order to be admissible, the admission need only be offered as evidence against the party.

Accordingly, we agree with the State that Juan Gonzales' testimony that appellant told him not to say anything to police and that appellant received his co-conspirator's compliments with the assertion that he had learned to kill in prison, were admissible under Rule 801(e)(2)(A) as the admissions of a party. Appellant's third and fifth points of error are overruled.

 Cervantes' statement is also admissible under Rule 801(e)(2). Cervantes' assertion apparently meant that appellant had snapped the victim's neck. Because appellant indicated his agreement with the assertion that he learned to kill in prison, Cervantes' statement is not hearsay but an adopted admission, admissible under Rule 801(e)(2)(B). *Cantu v. State,* 939 S.W.2d 627, 635 (Tex.Crim.App.1997). Appellant's fourth point of error is overruled.[6]

██ In his sixth point of error, appellant challenges the sufficiency of the evidence to sustain an affirmative answer to the second special issue, i.e., "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Article 37.071 § 2(b)(1). The State argues that the heinous facts of this case alone suffice to establish appellant's dangerousness and, alternatively, that the evidence introduced at punishment was sufficient to establish future dangerousness beyond a reasonable doubt.

In reviewing the sufficiency of the evidence on this issue we ask whether, in the light most favorable to the verdict, any rational trier of fact could have found beyond a reasonable doubt that there is a probability that appellant would commit criminal acts of violence constituting a con-

---

upheld if it is correct on any theory of law applicable to the case. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990).

6. Cervantes' statements could have been asserting that he himself had snapped the victim's neck. If this is so then it was a statement against interest admissible under Rule 803(24). *Cantu,* 939 S.W.2d at 635.

tinuing threat to society. *Chambers v. State*, 866 S.W.2d 9, 16 (Tex.Crim.App. 1993). In this light, the evidence establishes that after a history of crime, albeit non-violent, appellant was sentenced to six years in prison and was paroled from this sentence on May 10, 1996. While in prison he had been placed on administrative segregation for his involvement in a violent racist prison gang, Los Pistoleros Latinos. On June 10, 1996, only one month after being paroled, appellant and four others picked up a fifteen-year-old girl at a convenience store, took her to an isolated park, brutally gang raped her—in the course of the offense, appellant encouraged his fifteen-year-old cousin to join in, but the cousin refused—and then appellant cut the victim's throat, so as to not leave witnesses. Cervantes complimented appellant on his use of a knife, and appellant asserted "he had learned how to kill people in prison."

We have previously held that a finding of future dangerousness can be supported by evidence showing "an escalating pattern of disrespect for the law." *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997). In *King*, prior to the capital murder for which he was on trial, the defendant had committed burglary while on parole from theft charges. *Id.* We found that such an escalation of crimes established an escalating pattern of disrespect for the law from which a rational jury could draw an inference of future dangerousness. *Id.* While in *King* we did not specifically attribute significance to the fact that the burglary was committed while King was on parole, we find that the jury could have considered as evidence of future dangerousness the fact that appellant was on parole when he committed this crime.

Moreover, a jury can rationally infer future dangerousness from the brutality of the offense. *Sonnier v. State*, 913 S.W.2d 511, 517 (Tex.Crim.App.1995). We have in the past found the circumstances surrounding the crime to be "horrendous" when the crime was a gang rape and murder of two girls. *Cantu v. State*, 939 S.W.2d 627, 642 (Tex.Crim.App.), *cert. denied*, U.S. , —— U.S. ——, 118 S.Ct. 557, 139 L.Ed.2d 399 (1997). The gang rape and throat-cutting murder of the fifteen-year-old girl in this case also strikes us as being a particularly brutal crime, evidencing "a most dangerous aberration of character" supporting a jury's affirmative finding of future dangerousness. *See Sonnier*, 913 S.W.2d at 517.

Finally, future dangerousness can be inferred from evidence showing a lack of remorse and/or indicating an expressed willingness to engage in future violent acts. *Rachal v. State*, 917 S.W.2d 799, 806 (Tex.Crim.App.), *cert. denied*, 519 U.S. 1043, 117 S.Ct. 614, 136 L.Ed.2d 539 (1996). Appellant's statement after the murder that he "learned to kill in prison" indicates at least an initial lack of remorse for the killing and also that he was prepared to kill in the future. Moreover, rather than dissuade his younger cousin from the life of crime he had chosen for himself, appellant attempted to bring him into that world of crime. We conclude that there was sufficient evidence from which a rational jury could conclude that appellant would probably commit future acts of violence that would constitute a continuing threat to society. Appellant's sixth point of error is overruled.

Appellant's seventh and eighth points of error voice his contentions that the trial court erred in admitting into evidence the oath of Los Pistoleros Latinos, a document which outlines the racial qualifications and the goals and obligations of gang members. The document was introduced at punishment to educate the jury on the nature of appellant's gang association. Appellant argues in point seven that the document was irrelevant and more prejudicial than probative. Tex.R. Evid. 402 & 403. And in point eight appellant argues the admission of this evidence violated his right to due process. The State responds that appellant's arguments on

appeal do not comport with his objection at trial. The record supports the State.

At trial appellant objected only on grounds that the proper predicate had not been laid for the testimony. When that objection was sustained and the State laid its predicate, appellant renewed his objection "on the same grounds" but never argued that the evidence was irrelevant, prejudicial or in violation of due process. On these facts we must agree with the State that appellant's arguments have not been preserved for review. *E.g., Turner v. State,* 805 S.W.2d 423, 431 (Tex.Crim. App.1991) (to preserve an issue for appellate review, the point of error must at least minimally comport with the objection at trial). Appellant's seventh and eighth points of error are overruled.

In points nine through nineteen appellant challenges the constitutionality of the Texas death scheme on grounds which have been repeatedly rejected. We have reviewed his claims and find that they are without merit. Points of error nine through nineteen are overruled.

The judgment of the trial court is AFFIRMED.

MEYERS, J. filed a concurring opinion.

JOHNSON, J. concurred in the result.

MEYERS, J., delivered this concurring opinion.

I write to register my disagreement with the majority's observation in connection with appellant's point of error six that "the jury could have considered as evidence of future dangerousness the fact that appellant was on parole when he committed this crime." *Majority opinion* at 854. The majority says our opinion in *King v. State,* 953 S.W.2d 266 (Tex.Crim.App. 1997), did not "specifically" place significance on such fact, but suggests it was implied. I see no such implication there:

There are several reasons that the admission of the case summaries and disciplinary reports was harmless. First, the properly admitted judgments of appellant's prior convictions showed, chronologically, convictions for theft, theft, and burglary of a habitation. Appellant committed the burglary of a habitation while on parole from the theft charges. While theft and burglary are not the most violent of crimes, going from theft to burglary of a habitation shows an escalating pattern of disrespect for the law from which a jury could draw an inference of future dangerousness. . . .

*King,* 953 S.W.2d at 271.

Apart from the fact that the majority's comment has no basis in law, neither do I see a basis in logic. How is the fact that a defendant is serving parole at the time he commits another offense evidence of future dangerousness?[1] Certainly, evidence of the prior offense for which the defendant is on parole is probative of future dangerousness. But why is the fact that the defendant is serving community supervision while committing another crime more probative of future dangerousness than if the defendant serves out his term and then commits another crime? Why is it worse for a parolee to commit a crime than it is for a former felon to commit a crime? Of course a parolee is not supposed to commit crimes while on parole. But neither is *anyone* supposed to commit crimes. I just don't get it. At any rate, the majority does not explain its "finding" that a jury could consider such evidence as probative of future dangerousness.

With these remarks, I concur in the judgment.

1. While I would not presume to know anything about the standards utilized by the Board of Pardons and Paroles, the fact a defendant was granted a parole is arguably evidence that at least the Board of Pardons and Paroles was somewhat comfortable the defendant was not a danger to society at that time.