Brock Jerwayne **BALLARD**, Appellant,

v.

**STATE of Texas, Appellee.**

No. 11-01-00377-CR.

Court of Appeals of Texas,
Eastland.

June 5, 2003.

Discretionary Review Granted
Aug. 27, 2003.

---

Brock J. Ballard, Beaumont, Bruce C. Kaye, Law Office of Bruce C. Kaye, Dallas, for appellant.

Bill Hill, Dist. Atty., Criminal District Attorney–Appellate Section, Dallas, for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

Opinion

TERRY McCALL, Justice.

A jury convicted Brock Jerwayne Ballard of murder. TEX. PENAL CODE ANN. § .19.02 (Vernon 2003). Appellant pleaded true to a prior felony, and the trial court sentenced appellant to life imprisonment and a $10,000 fine. We affirm.

### Issues Presented

Appellant presents eight issues on appeal. In his third issue, appellant claims that his confessions to Daytron Taylor and Annette Menefee should have been excluded as hearsay. In his first issue, appellant claims that testimony offered by Esther Garcia and Vanessa Rodriguez also constituted impermissible hearsay. In his fifth and sixth issues, appellant complains that admission of the hearsay evidence and the confessions violated his constitutional rights under the confrontation clauses of both the United States Constitution and the Texas Constitution. In his seventh issue, appellant challenges the admission of an extraneous offense; and in his second, fourth, and eighth issues, appellant argues that the hearsay evidence and the extraneous offense should have been excluded as their probative value was greatly outweighed by the danger of unfair prejudice.

### Background Facts

Appellant was convicted of the murder of his former live-in girlfriend, Angelica Lopez. Lopez and appellant lived in Houston. The evidence showed that the couple's relationship was one of control and violence by appellant that included appellant being convicted of assaulting Lopez in July 1999. Appellant was released from jail in December 1999, and Lopez moved to Dallas in January 2000 in an attempt to escape from appellant. Appellant followed Lopez to Dallas, staying

there with her in her apartment. Lopez was found dead along the North Central Expressway service road in Dallas during the early morning of January 27, 2000, approximately two weeks after she moved to Dallas. Her car was found abandoned on the expressway about 150 feet from her body. She had been shot 15 times with a 9 millimeter gun; she also had a black eye and 6 hematomas to the back of her head. A bullet recovered from Lopez's apartment was fired from the same gun that was used to kill Lopez. Appellant's fingerprints were found on a box of 9 millimeter bullets in Lopez's car. Similar bullets were found in Lopez's apartment. Appellant's DNA was recovered from Lopez's car. Evonne Ruelas, who worked with Lopez at a Dallas club, testified that appellant was at the club almost the entire day of January 26, that she served appellant alcohol during that time, that it looked like Lopez and appellant were arguing, and that Lopez appeared to be upset.

Prior to Lopez's murder, one witness observed that appellant had a tattoo depicting the "Grim Reaper walking a dog" with the name "Angelica Ballard" at the top. Four days after Angelica Lopez was killed, appellant had another tattoo with "Angelica Ballard" written over a cross.

Detective Richard Dodge of the Dallas Police Department testified concerning the photographs of the crime scene and about the spent shell casings and bullets that he had collected at the crime scene. Detective John Davison of the Dallas Police Department introduced a receipt where Patricia Ann Ballard, appellant's aunt, had purchased a 9–millimeter Smith & Wesson handgun from a pawn shop on January 3, 2000. Detective Davison questioned Patricia Ann Ballard about the gun on February 4, 2000, but she said that she no longer

had the gun. Daytron Taylor testified that he saw appellant carry a 9–millimeter handgun prior to Lopez's death but not afterwards.[1] Detective Davison testified that appellant's fingerprints were on the box of 9 millimeter ammunition found in Lopez's car and that it was the same type of ammunition that was found inside Lopez's apartment. Detective Davison testified that the officers began trying to find appellant in February 2000; that an arrest warrant for appellant was obtained on March 17, 2000; and that they could not find appellant to arrest him until the Houston police found him in November 2000. Detective Davison testified that they contacted and questioned appellant's mother, grandparents, other relatives, and friends, but that appellant remained a fugitive for nine months. There was testimony that appellant knew that the police were looking for him. Based on his experience, Detective Davison expressed his opinion that the murder was one of domestic violence because "the amount of force that was used to cause the death [was] extensive."

### Appellant's Confessions to Daytron Taylor and Annette Menefee

Taylor, who lived in Houston, testified that his girlfriend was appellant's cousin; that appellant and Lopez did not always get along well; and that, after Lopez's death, he had asked appellant where Lopez was. Taylor testified that appellant made his living selling crack cocaine and that appellant first told him that Lopez died in a drug deal that went bad. Later, appellant told Taylor that he had killed Lopez by shooting her until his gun was empty.

---

1. At the trial, Taylor testified that he saw appellant with the gun "[b]etween, I guess,

October and December [1999]" and that "[e]verywhere he went, he kept it on him."

Appellant's aunt, Annette Menefee, also lived in Houston. Menefee testified that Lopez wanted to marry appellant, but that Lopez was fearful of how he treated her. Menefee recommended that Lopez get out of the relationship with appellant. The day after Lopez's death, Menefee asked appellant about Lopez. Appellant simply said: "[S]he wouldn't be with us no more." When Menefee asked if he had killed Lopez, appellant responded by hanging his head. Subsequently, appellant admitted to Menefee that he shot Lopez "in their car, in Dallas" and that he took the gun apart and threw its pieces away.

In his third issue, appellant complains that the testimony by Taylor and Menefee concerning appellant's confessions to them should have been excluded as hearsay. We disagree. A statement is not hearsay if it is offered against a party and is the party's own statement in either an individual or representative capacity. TEX.R.EVID. 801(e)(2)(A). "Rule 801(e)(2)(A) plainly and unequivocally states that a criminal defendant's own statements, when being offered against him, are not hearsay." *Trevino v. State,* 991 S.W.2d 849, 853 (Tex.Cr.App.1999); *McNair v. State,* 75 S.W.3d 69, 72 (Tex. App.-San Antonio 2002, no pet'n). Appellant's reliance on *Davis v. State,* 872 S.W.2d 743 (Tex.Cr.App.1994), is misplaced because *Davis* involved Rule 803(24), an exception to the hearsay rule. The hearsay exception for statements against a declarant's interest and the exclusion as non-hearsay for admissions by a party opponent are distinct. *Bingham v. State,* 987 S.W.2d 54, 56 (Tex.Cr.App. 1999); *McNair v. State,* supra. at 72. Appellant's third issue is overruled.

### Testimony by Esther Garcia and Vanessa Rodriguez

Several witnesses testified to the relationship between appellant and Lopez.

Lopez's mother, Esther Garcia, testified that she had planned a family birthday party for Lopez in January 1999, but that Lopez told her that "[appellant] said that if he doesn't come with me then, I can't go alone." Garcia testified that four days later Lopez called her late at night, saying that she needed money because appellant had threatened to beat and kill her unless she gave appellant $250. Garcia also testified that, in July 1999, Lopez came to stay with her and that Lopez had stitches and bandages on her face. Lopez explained that appellant had assaulted her and that she had to go to the hospital. The hospital records were admitted into evidence without objection, as were the records of appellant's conviction for the assault. Appellant was sentenced to 150 days in jail for the Class A assault. Garcia then testified how Lopez was afraid that, once appellant was released from jail, he would come after her. As a result, Lopez stayed with Garcia and then moved to Dallas in January 2000 in an attempt to get away from appellant.

Garcia kept Lopez's young son, Jeremy, while Lopez moved to Dallas. One day in January 2000, appellant's mother picked Jeremy up from day care, although Garcia maintained that she was the one authorized to pick Jeremy up. Garcia testified that, when she found Jeremy at the house of appellant's mother, Jeremy was frantic and excited, telling her that "[appellant was] very angry, he [had] a gun, he [was] going to hurt my mommy." Garcia changed schools for Jeremy the next day.

Garcia testified that on January 20, 2000, Lopez told her that she planned to come to Houston on January 27 for her birthday party at Garcia's home on January 28. On January 27, Garcia learned that Lopez had been murdered. Garcia

testified to other conversations when Lopez expressed her fear of appellant.

Vanessa Rodriguez testified that she worked with Lopez at a Dallas topless bar. She stated that she saw appellant with Lopez on the night of January 24, 2000, two days prior to the murder. Rodriguez also testified that Lopez told her that she was running from her boyfriend. Lopez told Rodriguez that she was with appellant against her will and that she did not have a choice to leave the relationship. Lopez also told Rodriguez that she was planning to leave Dallas to get away from appellant a second time. Another coworker, Evonne Ruelas, testified that appellant was with Lopez on the nights of January 25 & 26, 2000, the day prior to the murder and the night of the murder.

In his first issue, appellant argues that the trial court should have excluded the following testimony as hearsay: (1) Garcia's testimony that Lopez asked Garcia for a $250 loan because appellant had threatened to kill Lopez if Lopez did not give him $250 and Garcia's testimony that Lopez told Garcia that appellant assaulted Lopez in July 1999; and (2) Rodriguez's testimony that Lopez told Rodriguez that appellant had hurt Lopez with a gun and that the only way Lopez could leave appellant was to pack her belongings and leave in the middle of the night.

■ A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *Burden v. State*, 55 S.W.3d 608, 615 (Tex.Cr.App. 2001). An appellate court will not reverse a trial court's ruling unless that ruling falls outside the zone of reasonable disagreement. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex.Cr.App.2003); *Burden v. State*, supra at 615.

■ We will first deal with Garcia's testimony that Lopez told her that appellant assaulted Lopez in July 1999. Garcia testified that Lopez came into her apartment with stitches, bandages, and bruises on her face. When Garcia asked her daughter what had happened, Lopez told her about the assault by appellant. The hospital's medical records relating to the July 1999 assault were introduced without objection. The records reflected that the injuries were caused by a direct blow from the fist of Lopez's ex-boyfriend. Garcia identified appellant as the ex-boyfriend and stated that Lopez had not dated anyone else. Garcia told Lopez that "[she] need[ed] to call the police and make reports." Because the evidence of the July 1999 assault came in through Lopez's hospital records and the court record of appellant's assault conviction, appellant's hearsay objection to Garcia's testimony about the July 1999 assault was either waived or rendered harmless. See *Leday v. State*, 983 S.W.2d 713, 715–18 (Tex.Cr.App.1998)(distinguishing the rule of harmless error, waiver, and the common-law doctrine of curative admissibility); *Jones v. State*, 843 S.W.2d 487, 493 (Tex.Cr.App.1992), *cert. den'd*, 507 U.S. 1035, 113 S.Ct. 1858, 123 L.Ed.2d 479 (1993).

■ Garcia's testimony about Lopez's request for the $250 loan and Rodriguez's testimony concerning Lopez's statements that appellant had hurt her with a gun and that the only way she could leave was in the middle of the night were impermissible hearsay. These statements had no relevance except to prove the truth of the matters stated. They were merely statements of memory to prove the facts remembered and, therefore, were not admissible under TEX.R.EVID. 803(3). *Dorsey v. State*, 24 S.W.3d 921, 929 (Tex.App.-Beaumont 2000, no pet'n); *Navarro v. State*, 863 S.W.2d 191 (Tex.App.-Austin 1993), *pet'n ref'd*, 891 S.W.2d 648 (Tex.Cr. App.1994).

Under TEX.R.APP.P. 44.2(b), we disregard the error if it does not affect appellant's substantial rights. Rule 44.2(b); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex.Cr.App.1998). A substantial right is affected when the error had a substantial and injurious effect or influence on the jury's verdict. *Solomon v. State*, 49 S.W.3d 356, 365 (Tex.Cr.App. 2001); *King v. State*, 953 S.W.2d 266, 271 (Tex.Cr.App.1997). We review the record as a whole to determine whether the error had such an influence on the jury's verdict. *Mosley v. State*, supra at 259. Overwhelming evidence of guilt is a factor to be considered in a harm analysis conducted under Rule 44.2(b). *Motilla v. State*, 78 S.W.3d 352 (Tex.Cr.App.2002).

In view of *Motilla v. State*, supra, we reviewed a substantial portion of the testimony at the outset of this opinion. The evidence of guilt was overwhelming, and appellant did not challenge the sufficiency of the evidence. In its closing argument, as in *Motilla*, the State did not mention the impermissible hearsay testimony. The State only briefly mentioned the $250 loan in rebuttal. After reviewing the record as a whole, we conclude that the inadmissible evidence did not have a substantial and injurious effect on the jury's verdict. Appellant's first issue is overruled.

### Confrontation Clauses

In his fifth and sixth issues, appellant complains that the admission of the hearsay statements through Garcia and the admission of his confessions to Taylor and Menefee violated his constitutional right to confront witnesses under both the United States Constitution and the Texas Constitution. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. Appellant did not preserve error. At trial, appellant objected to the testimony only on the ground of inadmissible hearsay. Although admission of hearsay evidence against a criminal defendant implicates the confrontation clauses, hearsay objections and objections to violations of the constitutional right to confront witnesses are neither synonymous nor necessarily coextensive. *Holland v. State*, 802 S.W.2d 696, 700 (Tex.Cr.App.1991). "Although the right of confrontation is vital to an ordered criminal justice system, and of constitutional magnitude it is nonetheless a trial right." *Mallory v. State*, 752 S.W.2d 566, 569 (Tex.Cr.App.1988). Because he did not object to the testimony on the basis of his right to confront witnesses, appellant waived review of this claim on appeal. TEX.R.APP.P. 33.1. Moreover, testimony about his confessions was not hearsay because a "party cannot complain of an inability to cross-examine him/herself." *Bingham v. State*, supra at 55. Appellant's fifth and sixth issues are overruled.

### Extraneous Offense

In his seventh issue, appellant complains that evidence of an extraneous offense should have been excluded under TEX. R.EVID. 404(b). Taylor testified that appellant sold crack cocaine for a living. Appellant objected to the evidence on the grounds that this was an extraneous offense. Rule 404(b) states that:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake.

The testimony was not used to show that appellant acted with the conformity of a drug dealer but, instead, to explain why appellant would tell Taylor that Lopez died in a drug deal that went

bad. As mentioned above, appellant first told Taylor that Lopez died in a drug deal that went bad and then later changed his story and admitted to shooting Lopez "until his gun ran out of ammunition." The trial court did not abuse its discretion in allowing the extraneous offense testimony into evidence. Appellant's seventh issue is overruled.

### Rule 403

In his second, fourth, and eighth issues, appellant argues that evidence of the hearsay statements and extraneous offense should have been excluded under TEX. R.EVID. 403. Appellant raises these issues for the first time on appeal; therefore, they were not preserved. Rule 33.1. Appellant's second, fourth, and eighth issues are overruled.

### This Court's Ruling

The judgment of the trial court is affirmed.