**Opinion filed April 30, 2021**



# In The

# Eleventh Court of Appeals

_____

## No. 11-19-00192-CR

_____

## MICHAEL BRYAN TEMPLETON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 244th District Court**

**Ector County, Texas**

**Trial Court Cause No. C-18-0721-CR**

## O P I N I O N

On April 3, 2018, the grand jury indicted Appellant, Michael Bryan Templeton, for the third-degree felony offense of assault family violence by strangulation. TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(2)(B) (West Supp. 2020). The jury convicted Appellant of the charged offense, found an enhancement allegation to be true, and assessed Appellant's punishment at eight years'

imprisonment in the Texas Department of Criminal Justice, Institutional Division. The trial court sentenced Appellant accordingly. In three issues on appeal, Appellant contends that (1) his right to a unanimous verdict was violated because fundamental error existed in the trial court's charge, (2) he was denied effective assistance of counsel because his trial counsel failed to object to the trial court's charge, and (3) the trial court abused its discretion when it admitted hearsay testimony pursuant to the excited utterance and statement against interest exceptions in Texas Rule of Evidence 803. We affirm.

## I. *Factual Background*

On November 5, 2017, the victim, W.S., and her nine-year-old son, R.S., went to her parents' home in Ector County. When they arrived, W.S. was "very distraught and afraid." At the time, W.S. and R.S. lived approximately six blocks away from her parents' residence. W.S.'s father and mother, Eddy and Joyce Spivey, testified that W.S. and R.S. were crying, were sweating profusely, and were out of breath, as if they had been running. W.S. had several noticeable bruises and lacerations on her face; her eyes were swollen; and she was holding her neck. Over a hearsay objection, Eddy testified that W.S. told him that Appellant, her boyfriend, had threatened to kill her and R.S. The trial court concluded that W.S.'s statements to Eddy qualified as an excited utterance and admitted Eddy's testimony. According to Eddy, W.S. stated that Appellant had beaten her and put his knee on her neck, holding her to the floor. W.S. also stated that she wanted to call the police and report these events and that she wanted to file charges against Appellant. Eddy and Joyce testified that neither of them coerced W.S. into calling the police that night.

Brandon Spinks, who was an officer with the Odessa Police Department at the time of these events, responded to W.S.'s 9-1-1 call. Officer Spinks testified that, during an on-scene video interview, W.S. informed him that Appellant had

previously assaulted her on October 30, 2017. W.S. also memorialized these events in a signed, written statement that she provided to Officer Spinks. Officer Spinks further testified that he conversed with W.S. about these assaults in the presence of Eddy and Joyce and, at times, outside of their presence and that W.S.'s version of events never changed. In the signed statement that W.S. provided to Officer Spinks, W.S. stated that Appellant had threatened her and physically assaulted her on October 30. The assault ended only because W.S. needed to leave to pick up the children[1] from school—W.S. and Appellant later explained to the children that her visible injuries were present because she had fainted while showering and had fallen. In her written statement, W.S. further explained that, on November 5, "the threats started up again so this time I ran off from him before he could ever start hurting me again."

After the November 5 incident, W.S. stayed at her parents' house for two months before she returned to the house that she shared with Appellant. Later, in January of 2018, Eddy received a phone call from W.S. The call appeared to be a "butt-dial" because, although Eddy could hear W.S. and Appellant speaking, neither of them appeared to be aware that Eddy was on the line and listening to their conversation. Over a hearsay objection, Eddy testified that he overheard Appellant tell W.S. during this call that, if Appellant wanted to physically abuse W.S., it was a matter for them to resolve and was not anyone else's business, including her parents or the police.

According to Eddy, Appellant generally would prohibit Eddy and Joyce from having any contact with W.S. and their grandson, R.S. Eddy also testified that W.S. was dependent on Appellant.

---

[1]Appellant has one child from a previous relationship. Although Appellant is not the father of R.S., Appellant and W.S. shared child-raising duties for both children.

3

At trial, W.S.'s version of events changed. W.S. testified that, on November 5, Appellant's ex-girlfriend arrived at the house that W.S. shared with Appellant and that the ex-girlfriend wanted to fight W.S. W.S. stated that they had fought previously and that their pervious altercation had caused the bruises and lacerations on her body that she showed to Eddy, Joyce, and Officer Spinks on November 5. W.S. claimed that the reason she took R.S. and ran to her parents' house that evening was to avoid fighting with Appellant's ex-girlfriend.[2] According to W.S., Eddy and Joyce "did not want to hear" that the culprit for her injuries was someone other than Appellant, and they had threatened to take R.S. away from her if she did not say that Appellant was abusive and had assaulted her. Nevertheless, Eddy testified that, when W.S. spoke to him on November 5, she only mentioned that Appellant's assaultive conduct had caused her injuries.

Appellant testified that W.S. had fought with his ex-girlfriend on November 5, and he denied striking or strangling W.S. that day. According to Appellant, for several years W.S. and the ex-girlfriend had fought frequently, and the police had been called about their scuffles on multiple occasions; however, law enforcement never did anything to resolve this dilemma. Appellant testified that, on or about October 30, the ex-girlfriend had beaten W.S. Like W.S., Appellant testified that W.S. ran to her parents' house on November 5 to avoid another fight with Appellant's ex-girlfriend. Appellant admitted that, although (by his account) they had always called the police when the two women fought, no one called the police on either October 30 or November 5 to report that W.S. and Appellant's ex-girlfriend had fought again.

---

[2]After this statement, the trial court excused the jury to admonish W.S. regarding her right to counsel and her right against self-incrimination because her trial testimony conflicted with her prior statement and implicated that she had committed an offense by providing a false report to a police officer.

At trial, Appellant claimed that Eddy was untruthful about overhearing a "butt-dial" phone call in which Appellant had allegedly discussed beating W.S. He also claimed that W.S. was untruthful in her video-recorded police interview when she stated that Appellant had beaten her and threatened to kill her.

## II. *Analysis*

### A. *Charge Error*

In his first issue, Appellant contends that his right to a unanimous jury verdict was violated because fundamental error existed in the trial court's charge. Specifically, Appellant complains of the following instruction in the charge, which concerns the date of the alleged offense:

> You are further charged that the State is not required to prove the exact date alleged in the indictment but may prove the offense, if any, to have been committed at any time prior to the presentment of the indictment so long as said offense, if any, occurred within three years of the date of the presentment of the indictment.

Because the aforementioned instruction was proper in form, was legally correct, and was appropriately submitted, we hold that the trial court's charge did not violate Appellant's right to a unanimous verdict.

We review alleged charge error by considering: (1) whether error existed in the charge and (2) whether sufficient harm resulted from the error to compel reversal.[3] *Leza v. State*, 351 S.W.3d 344, 355–56 n.45 (Tex. Crim. App. 2011)

---

[3]Although Appellant's trial counsel did not object that the trial court's charge failed to require jury unanimity, the error, if any, of trial counsel's failure to object may be raised for the first time on appeal. *See Leza v. State*, 351 S.W.3d 344, 355–56 n.45 (Tex. Crim. App. 2011) (citing *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005)). However, if no trial objection was raised, the record must demonstrate that the error, if any, caused egregious harm before Appellant may be entitled to relief. *Id.* Because no error exists in the trial court's charge, we do not reach the question of whether Appellant was egregiously harmed. *See* TEX. R. APP. P. 47.1.

(citing *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005)); *Hardeman v. State*, 556 S.W.3d 916, 924 (Tex. App.—Eastland 2018, pet. ref'd).

"Under [the Texas Constitution], jury unanimity is required in felony cases, and, under our state statutes, unanimity is required in all criminal cases." *Ngo*, 175 S.W.3d at 745; *see* TEX. CONST. art. V, § 13; TEX. CODE CRIM. PROC. ANN. arts. 36.29(a) (West Supp. 2020), 37.02, 37.03 (West 2006). "Unanimity in this context means that each and every juror agrees that the defendant committed the same, single, specific criminal act." *Ngo*, 175 S.W.3d at 745.

It is well settled that the inclusion of "on or about" language in an indictment allows the State to prove at trial that the charged offense occurred on a date other than the specific date alleged in the indictment, provided that the offense date that is proven at trial occurred prior to the presentment of the indictment (which is typically the date the indictment is filed of record) and within the applicable statutory limitations period. *See* CRIM. PROC. art. 21.02(6) (West 2009); *Klein v. State*, 273 S.W.3d 297, 303 n.5 (Tex. Crim. App. 2008) ("Consistent with Texas jurisprudence dating back to about 1870, the jury was instructed that 'the State is not required to prove the exact date alleged in the indictment but may prove the offense if any to have been committed any time prior to . . . the presentment date of the indictment, so long as said offense, if any, occurred within [the statutory limitation period].'" (citing *Mireles v. State*, 901 S.W.2d 458, 463–70 (Tex. Crim. App. 1995) (Meyers, J., dissenting))); *Sledge v. State*, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997); *Siedl v. State*, No. 11-16-00258-CR, 2018 WL 4201444, at *2 (Tex. App.—Eastland Aug. 31, 2018, pet. ref'd) (mem. op., not designated for publication). When an indictment alleges that a relevant event occurred "on or about" a particular date, "the accused is put on notice to prepare for proof that the event happened at any time within the statutory period of limitations." *Thomas v. State*, 753 S.W.2d 688, 692

(Tex. Crim. App. 1988). Here, the applicable limitations period for the charged offense, assault family violence, falls within and is subject to the Code of Criminal Procedure's three-year "catch-all" provision. CRIM. PROC. art. 12.01(8).

Appellant asserts that the instruction included in the trial court's charge provided the jury with alternatives upon which to base its verdict and, thus, failed to require unanimity as to the exact basis for its verdict. Appellant relies on our opinion in *Ngo v. State* for the proposition that, when a jury is presented with alternatives upon which to base its verdict, the jury's verdict can never be unanimous. *See Ngo v. State*, 129 S.W.3d 198, 200 (Tex. App.—Eastland 2004), *aff'd*, 175 S.W.3d 738 (Tex. Crim. App. 2005). Although *Ngo* does stand for that general proposition, it is inapposite to Appellant's argument here.

In *Ngo*, the indictment alleged three separate offenses under Section 32.31 of the Penal Code for the theft, receipt, or fraudulent presentation of stolen credit cards. *Ngo*, 129 S.W.3d at 200. The trial court's charge permitted the jury to convict the defendant by a general verdict if it found that any of the charged offenses had been proved. *Id*. We held that the application paragraph in the trial court's charge did not require that the jurors unanimously agree on any one of the three alternative theories; thus, the trial court's charge, as submitted, violated the unanimity requirement of both the Texas Constitution and the applicable provisions of the Texas Code of Criminal Procedure. *Id.* Hence, the error in *Ngo* was that the trial court's charge did not require that the jurors unanimously agree upon which of the charged offenses the defendant had committed. *Id.*

Here, the State alleged only one offense in the indictment: assault family violence by strangulation. The State alleged—and the evidence adduced at trial showed—that Appellant committed this offense on only one occasion (October 30, 2017). Moreover, the trial court's charge contained a single application paragraph

which only authorized the jury to convict Appellant of the lone charged offense. Although the exact date upon which the charged offense was committed was disputed at trial, this uncertainty is of no consequence and does not give rise to "alternatives upon which [the jury may] base its verdict" or to the necessity for the trial court to submit more than a general unanimity instruction, which, in this case, it did.

The indictment filed against Appellant was presented on April 3, 2018, and it alleged that Appellant committed the charged offense "on or about October 30, 2017." The State presented evidence at trial that the charged offense, in fact, occurred on October 30, 2017. The trial court included in its charge the generally accepted instruction that the State was not required to prove the exact date that the charged offense occurred, as alleged in the indictment, but, rather, could prove that the offense had been committed at any time prior to the presentment of the indictment, so long as the offense occurred within three years of the indictment's presentment date. The "on or about" phrase at issue is uniformly included in the trial court's charge in such instances because there are occasions when the precise offense date cannot be ascertained. Here, the submitted instruction was an appropriate and correct statement of the applicable law. As such, the trial court did not err when it charged the jury in this manner. Nor did the trial court err when it only included a general unanimity instruction in its charge because only one offense, as alleged in the indictment, was proved by the evidence at trial. *See Cosio v. State*, 353 S.W.3d 766, 776 (Tex. Crim. App. 2011) ("[T]he jury must be instructed that it must unanimously agree on one incident of criminal conduct (or unit of prosecution), based on the evidence, that meets all of the essential elements of the single charged offense beyond a reasonable doubt." (citing *Ngo*, 175 S.W.3d at 748)). Appellant,

therefore, was not deprived of his right to a unanimous jury verdict. Accordingly, we overrule Appellant's first issue.

### B. Ineffective Assistance of Counsel

In his second issue, Appellant asserts that his trial counsel was ineffective because his trial counsel failed to object to the alleged charge error that Appellant raised in his first issue on appeal.[4] In light of our disposition of Appellant's first issue, we overrule his second issue.

As we have said, the inclusion of "on or about" language in an indictment only requires that the State prove that the charged offense occurred before the presentment date of the indictment and within the applicable statutory limitations period. Here, the controlling and applicable law was correctly recited in the trial court's charge. Therefore, any objection or challenge to the trial court's charge on the basis that Appellant now raises would have been useless and futile. *See Yzaguirre v. State*, 957 S.W.2d 38, 39 (Tex. Crim. App. 1997). Trial counsel is not required to engage in useless or futile acts. *Ex parte Chandler*, 182 S.W.3d 350, 356 (Tex. Crim. App. 2005); *Mooney v. State*, 817 S.W.2d 693, 698 (Tex. Crim. App. 1991); *see also Gross v. State*, No. 11-17-00060-CR, 2019 WL 613686, at *8 (Tex. App.—Eastland Feb. 14, 2019, pet. ref'd) (mem. op., not designated for publication) ("Trial counsel does not render ineffective assistance of counsel when he fails to

---

[4]Generally, to prevail on a claim of ineffective assistance of counsel, Appellant must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced his defense. *Garza v. State*, 213 S.W.3d 338, 347–48 (Tex. Crim. App. 2007) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). This requires a showing that trial counsel's representation fell below an objective standard of reasonableness and that a reasonable probability exists that the result of the trial would have been different but for trial counsel's errors. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) (citing *Strickland*, 466 U.S. at 687–88). A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the trial. *Strickland*, 466 U.S. at 694. On appeal, our review of trial counsel's representation is highly deferential and presumes that trial counsel's actions fell within the wide range of reasonable and professional assistance. *Garza*, 213 S.W.3d at 348.

object to admissible evidence."). Because there is no charge error as Appellant suggests, Appellant could not have received ineffective assistance of counsel.

### C. Evidentiary Rulings – Standard of Review

We turn now to Appellant's third issue whereby Appellant contends that the trial court abused its discretion when it admitted hearsay testimony under the excited utterance and statement against interest exceptions to the hearsay rule. *See* TEX. R. EVID. 803(2), (24). Specifically, Appellant's complaint is two-fold: (1) the trial court improperly admitted, under the excited utterance exception, Eddy's testimony regarding the statements W.S. made to him on November 5 that Appellant had threatened to kill her; and (2) the trial court improperly admitted, under the statement against interest exception, Eddy's testimony concerning the "butt-dial" in which he overheard Appellant discuss the physical abuse he had inflicted upon W.S.

We review for an abuse of discretion whether an out-of-court statement was properly admitted pursuant to an exception to the general hearsay rule. *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008); *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005); *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). We will not reverse a trial court's decision to admit evidence, and the trial court does not abuse its discretion, unless its decision lies outside the zone of reasonable disagreement. *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018); *Taylor*, 268 S.W.3d at 579; *McCarty*, 257 S.W.3d at 239. Furthermore, we will not disturb a trial court's evidentiary ruling, even if the trial court's reasoning was flawed, if it is correct on any theory of law that reasonably finds support in the record and is applicable to that ruling. *Henley v. State*, 493 S.W.3d 77, 93 (Tex. Crim. App. 2016); *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *Gonzalez v. State*, 195 S.W.3d 114, 125–26 (Tex. Crim. App. 2006); *Willover v. State*, 70 S.W.3d

841, 845 (Tex. Crim. App. 2002); *Dering v. State*, 465 S.W.3d 668, 670 (Tex. App.—Eastland 2015, no pet.).

### 1. *Excited Utterance*

Here, the trial court correctly determined that the statements W.S. made to Eddy were hearsay. Hearsay is a statement, other than one made by the declarant while testifying at trial, that is offered to prove the truth of the matter asserted in the statement. TEX. R. EVID. 801(d); *see Willover*, 70 S.W.3d at 845. Generally, hearsay evidence is not admissible unless it falls within one or more of the recognized exceptions. *See generally* TEX. R. EVID. 802, 803.

One of the exceptions to the hearsay rule that allows for the admissibility of hearsay testimony is when the testimony includes a statement that constitutes an excited utterance. An excited utterance is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." TEX. R. EVID. 803(2). The type of emotion that dominates the declarant is not critical; what is controlling is whether, at the time the statement was made, the declarant was still dominated by the emotions, excitement, fear, or pain that was caused by the startling event or condition. *See McCarty*, 257 S.W.3d at 239; *Zuliani*, 97 S.W.3d at 595. Therefore, if the statement is an excited utterance, there can be no abuse of discretion to admit it. *See Osbourn v. State*, 92 S.W.3d 531, 537–38 (Tex. Crim. App. 2002).

When determining the admissibility of a statement that is offered as an excited utterance, we address three concerns: "that (1) the 'exciting event' should be startling enough to evoke a truly *spontaneous* reaction from the declarant; (2) the reaction to the startling event should be quick enough to avoid the possibility of fabrication; and (3) the resulting statement should be sufficiently 'related to' the startling event, to ensure the reliability and trustworthiness of that statement."

*McCarty*, 257 S.W.3d at 241. Nevertheless, "under the excited utterance exception, the startling [or exciting] event may trigger a spontaneous statement that relates to a *much earlier* incident." *Id.* at 240. This comports with the purpose of the exception, which is based on the assumption that the person who makes an excited utterance is not then capable of the kind of reflection that would enable that person to fabricate the information that is related. *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005). Thus, "[t]he trustworthiness of the statement is founded on the fact that it is the *event* that speaks through the person and not merely the declarant relating the event." *Tienda v. State*, 479 S.W.3d 863, 875 (Tex. App.—Eastland 2015, no pet.) (emphasis added) (citing *Zuliani*, 97 S.W.3d at 595); *see Evans v. State*, 480 S.W.2d 387, 389 (Tex. Crim. App. 1972).

We note at the outset that, even if the trial court abused its discretion when it admitted the hearsay statements that W.S. made to Eddy, and we do not hold that it did, no harm would have resulted from its decision to admit Eddy's challenged testimony. Essentially the same information as Eddy's challenged testimony was included in the signed statement that W.S. provided to Officer Spinks on November 5, and W.S.'s statement was admitted without objection when the State offered it at trial. Therefore, the error, if any, in the admission of Eddy's challenged testimony was cured when the same evidence (W.S.'s written statement) was later offered and admitted, without objection, during Appellant's trial. *Nicholls v. State*, No. 11-19-00120-CR, 2021 WL 1034047, at *4 (Tex. App.—Eastland March 18, 2021, no pet. h.) (citing *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003); *see Johnson v. State*, 803 S.W.2d 272, 291 (Tex. Crim. App. 1990)). Nevertheless, irrespective of the admission of W.S.'s signed statement, and for the reasons explained below, we hold that the trial court did not abuse its discretion when it admitted the challenged statements that W.S. made to Eddy.

Appellant contends that the statements that W.S. immediately made upon her arrival at her parents' house—that Appellant had threatened to kill her—cannot fall under the excited utterance exception because the statements, although related to the assault that Appellant had committed on October 30, were not made until November 5. In support of this assertion, Appellant emphasizes that W.S. had a significant period of time to reflect and consider what she would express about the events that had occurred on October 30 because, in her statement to Officer Spinks, she stated that, after Appellant assaulted her on October 30, the conflict with Appellant did not end until she left to go pick up the children from school. Appellant contends that, because W.S. was no longer in Appellant's presence after she left to pick up the children from school, and thus arguably no longer in an excited or emotional state, this passage of time negated the spontaneous nature of the statements that she made to Eddy on November 5. Appellant further asserts that W.S. was also motivated to claim that Appellant assaulted her on October 30 because her parents had threatened to take R.S. away from her if she did not accuse Appellant of abusive conduct. We disagree.

As we have said, the startling event that triggers an excited utterance need not be based on the original offense; other unrelated events may cause the excited or emotional condition to flare up. *See McCarty*, 257 S.W.3d at 240. Consequently, the *startling event* that triggers an excited utterance may in fact be caused or precipitated by a subsequent event—if the subsequent event is itself a startling event. *Id.* Here, Eddy testified that, when W.S. arrived at his house on November 5, she was crying, she was sweating profusely, and she was out of breath. When Eddy asked W.S. why she and R.S. were upset, she immediately and excitedly responded that Appellant had threatened to kill both of them. Emotional domination, without more, is not sufficient to invoke the excited utterance exception. *See McCarty*, 257

S.W.3d at 241; *Tienda*, 479 S.W.3d at 877. However, the other relevant factors as expressed in *McCarty*—that the reaction to the startling event was made soon enough to prevent the possibility of fabrication and that the resulting statement was sufficiently related to the startling event to be considered reliable and trustworthy— when combined with W.S.'s emotional and distraught state clearly support the admission of W.S.'s statements to Eddy as excited utterances. Appellant had threatened W.S. on November 5, and the statements that W.S. made to Eddy and Joyce that evening about these threats, and the multiple beatings she had endured, were precipitated by those specific threats, which in turn resurrected her emotional and frantic state. Furthermore, the statements that W.S. communicated to her parents that same evening about how Appellant had assaulted her on October 30 were directly triggered by and resulted from the subsequent "death" threats that Appellant had expressed to her on November 5.

Additional circumstances further support the admission of W.S.'s hearsay statements. In her signed statement to Officer Spinks, W.S. stated that Appellant had threatened and physically assaulted her on October 30 and that, on November 5, "the threats started up again so this time I ran off from him before he could ever start hurting me again." The statements W.S. made to Officer Spinks described in detail her emotional state and physical condition when she and R.S. arrived at her parents' house on November 5 (she was crying, out of breath, and had several bruises and lacerations on her face and neck), indicated that she had run directly from her home because she feared Appellant, and also indicated that Appellant's threats had "start[ed] up again" that day. Here, the subsequent abuse and trauma that Appellant inflicted upon W.S. on November 5 was clearly a startling event that triggered the spontaneous and excited utterances that W.S. made to Eddy and Officer Spinks that day about how she was violently assaulted by Appellant on October 30. *See*

*Apolinar*, 155 S.W.3d at 186–87 (declarant was "dominated by the emotions, excitement, fear, or pain of the event." (citing *Zuliani*, 97 S.W.3d at 596)). These circumstances are more than sufficient to support the trial court's decision to admit, as excited utterances, W.S.'s hearsay statements that Appellant had threatened to kill her and R.S. *See McCarty*, 257 S.W.3d at 241; *Apolinar*, 155 S.W.3d at 186–87. Accordingly, the trial court did not abuse its discretion when it admitted W.S.'s statements to Eddy under the excited utterance exception to the hearsay rule.

## 2. Admissions

Appellant further challenges the admission of Eddy's testimony concerning the statements he overheard Appellant make during a "butt-dial" phone call. Appellant contends that the trial court erred when it determined that these statements, and Eddy's testimony that described them, were admissible, purportedly, under the statement-against-interest exception to the hearsay rule. *See* TEX. R. EVID. 803(24). We hold, albeit for different reasons, that the trial court would not have abused its discretion if it admitted these statements and Eddy's testimony on that basis.

The hearsay exception that governs statements against interest is based on the commonsense assumption that "people ordinarily do not say things that are damaging to themselves unless they believe they are true." *Walter v. State*, 267 S.W.3d 883, 890 (Tex. Crim. App. 2008) (citing *Lilly v. Virginia*, 527 U.S. 116, 126–27 (1999)). Thus, a reasonable person would not normally claim that he committed a crime, unless it were true. *Id.* (citing *United States v. Watson*, 525 F.3d 583, 586 (7th Cir. 2008)). Pursuant to Rule 803(24) of the Texas Rules of Evidence, a two-step foundation requirement must be satisfied before hearsay statements against a person's penal interest may be admitted. *Id.* (citing *Dewberry v. State*, 4 S.W.3d 735, 751 (Tex. Crim. App. 1999); *Bingham v. State*, 987 S.W.2d 54, 57 (Tex.

15

Crim. App. 1999)).  First, the trial court must determine whether the statement, considering all of the circumstances, subjects the declarant to criminal liability and whether the declarant realized this risk when he made the statement.  *Walter*, 267 S.W.3d at 890–91 (citing *Dewberry*, 4 S.W.3d at 751).  Second, the court must determine whether there are sufficient corroborating circumstances that clearly indicate that the statement is trustworthy.  *Id.* at 891 (citing *Dewberry*, 4 S.W.3d at 751; *Bingham*, 987 S.W.2d at 57).

Statements against one's penal interest fall into three general categories: (1) self-inculpating statements; (2) statements that equally inculpate the declarant and a third party; and (3) statements that inculpate both the declarant and a third party but shifts blame to another by minimizing the speaker's culpability.  *Walter*, 267 S.W.3d at 891–92.  In this case, assuming *arguendo* that Appellant's statements are subject to the admissibility criteria of Rule 803(24), his statements would be characterized as self-inculpating.  *See id.* at 891; *Woods v. State*, 152 S.W.3d 105, 112 (Tex. Crim. App. 2004); *see also Williamson v. United States*, 512 U.S. 594, 603 (1994) ("[W]hether a statement [against penal interest] is self-inculpatory or not can only be determined by viewing it in context.").  During the "butt-dialed" phone call that Eddy overheard, Appellant admitted that he physically abused W.S. and stated that his assaultive conduct was between him and W.S., not her parents or the police.  These statements clearly subject Appellant to criminal liability and further indicate that he was cognizant of this fact.  *See, e.g., Orona v. State*, 341 S.W.3d 452, 465 (Tex. App.—Fort Worth 2011, pet. ref'd) (coconspirator's statement that he and the appellant beat the victim equally exposed both to criminal liability, and the trustworthiness of the statement was corroborated by other testimony showing the coconspirator and the appellant had beaten the victim) (citing *Walter*, 267 S.W.3d at 899).

Assuming further that the requirements of Rule 803(24) are applicable to the trial court's evidentiary determination in this instance, there are also sufficient corroborating circumstances that establish the trustworthiness of Appellant's statements. Eddy testified that, on November 5, W.S. told him that Appellant had recently beaten her and that he had, again, threatened her. In her signed statement to Officer Spinks, W.S. reiterated the same version of events. W.S. also bore the physical signs of having been subjected to another assault at the hands of Appellant (she had black eyes and bruises and lacerations all over her face and neck). According to Eddy, Appellant generally had prohibited Eddy and Joyce from having any contact with W.S. and R.S. Furthermore, Eddy testified that W.S. was dependent on Appellant. This evidence and the existing circumstances corroborate the trustworthiness of the statements and admissions made by Appellant during the overheard "butt-dial" phone call. Therefore, assuming that the trial court determined that Appellant's statements during this call were made against his own penal interest, as the State claims, then the trial court would not have abused its discretion if it admitted these statements solely on that basis.

Although not raised on appeal by either Appellant or the State, and despite the trial court's lack of clarity in its admissibility determination, we hold that the admissibility of the statements and admissions made by Appellant during the "butt-dial" phone call is more akin to the requirements of Rule 801(e)(2)(A) of the Texas Rules of Evidence (commonly referred to as the admission of a party-opponent rule). This rule provides that a statement is not hearsay if it is offered *against* a party to the proceeding and is that party's own statement. *See* TEX. R. EVID. 801(e)(2)(A). Therefore, a criminal defendant's own statement, when offered against him, is not hearsay and is admissible. *Trevino v. State*, 991 S.W.2d 849, 853 (Tex. Crim. App. 1999); *Ballard v. State*, 110 S.W.3d 538, 542 (Tex. App.—Eastland 2003, pet.

dism'd). To satisfy the admissibility requirements for an admission of a party-opponent under Rule 801(e)(2)(A), it must be shown that the admission is the party-opponent's own statement and that it is offered against him. *Trevino*, 991 S.W.2d at 853; *Ballard*, 110 S.W.3d at 542. Unlike statements against interest, a party's admission need not be against the interests of the party when made in order to be admissible. *Trevino*, 991 S.W.2d at 853; *Ballard*, 110 S.W.3d at 542. Rather, the admission only needs to be offered as evidence *against* the party who made the admission. *Trevino*, 991 S.W.2d at 853; *Ballard*, 110 S.W.3d at 542; *see also Bingham v. State*, 987 S.W.2d 54, 56 (Tex. Crim. App. 1999) (noting that the hearsay exception for statements against a declarant's interest and the exclusion as non-hearsay for admissions by a party-opponent are distinct).

Here, it is undisputed that Appellant uttered these challenged statements during the "butt-dial" phone call and that these statements were offered and used against Appellant by his opposing party, the State. Therefore, because Appellant's statements, and thus his admissions, qualified as an opposing party's statement under Rule 801(e)(2)(A), these challenged statements would not be hearsay by definition and would, therefore, be admissible. *Trevino*, 991 S.W.2d at 853; *Ballard*, 110 S.W.3d at 542. As such, the trial would not have erred if it admitted these statements on that basis. *See Billing v. State*, 399 S.W.3d 581, 590 (Tex. App.—Eastland 2013, no pet.) (testimony from an officer that during a phone call he heard a male voice saying, "Open the door," was admissible as an admission by a party-opponent).

Having considered the record before us and the applicable standards of review, we hold, as discussed above, that the trial court did not abuse its discretion when it admitted the challenged statements and admissions made by Appellant during the "butt-dial" phone call, under either Rule 803(24) or Rule 801(e)(2)(A), because "any declaration against interest in which the defendant is the declarant of

the statement would virtually always be admissible under [Rule] 801(e)(2), as an admission by a party-opponent." *See Bingham*, 987 S.W.2d at 57. Accordingly, we overrule Appellant's third issue.

## III. *This Court's Ruling*

We affirm the judgment of the trial court.


W. STACY TROTTER

JUSTICE


April 30, 2021

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.