

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-430-CR

JAMES THOMAS KAVANAGH                                      APPELLANT

V.

THE STATE OF TEXAS                                                STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant James Thomas Kavanagh appeals his conviction for aggravated assault. In his sole issue, Kavanagh argues that the evidence admitted at trial was factually insufficient to sustain his conviction. Specifically, he argues that the accomplice-witness testimony was insufficiently corroborated and that,

---

[1] *See* Tex. R. App. P. 47.4.

excluding that testimony, the evidence was factually insufficient. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On March 27, 2007, Ramiro "Junior" Perez was robbed and seriously beaten. He remembered being at a house on South Adams Street, where Annabelle Nieto and Elizabeth Dawn Howard lived, to help Jennifer Smith move. He remembered getting hit in the head, awakening badly hurt in his van, and walking to his son's nearby house. His wallet, watch, and money had been stolen. The attack left Perez with substantial injuries, including permanent blindness in his right eye, punctured lungs, and a lacerated liver. He required a titanium plate in his head and eight screws in his jaw. Perez was hospitalized for a month and, as of the time of Kavanagh's trial, had not been able to work since the attack.

Police interviewed Smith in connection with the assault and learned of Kavanagh's involvement. Police then interviewed Kavanagh, who ultimately admitted to hitting Perez "once or twice," loading him in his van, and driving him a few blocks away. Kavanagh was charged with two counts of aggravated robbery with a deadly weapon and one count of aggravated assault.

At Kavanagh's trial, Howard testified about how she, Kavanagh, Nieto, and Smith planned to rob Perez and about the details of the crime. Howard received a reduced sentence in exchange for her testimony. The State also

2

introduced testimony from two Fort Worth police officers who investigated the case, from Perez, and from Nieto's daughter Caress Lozano, and the State introduced an audio-taped interview between Kavanagh and Detective Dana Baggott.

The jury convicted Kavanagh of aggravated assault and assessed his punishment at six years' confinement. The trial court sentenced him accordingly.

### III. FACTUAL SUFFICIENCY STANDARD OF REVIEW

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414–15, 417. To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of

3

all the evidence, although legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

Unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *see Steadman*, 280 S.W.3d at 246. Evidence is always factually sufficient when it preponderates in favor of the conviction. *Steadman*, 280 S.W.3d at 247; *see Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Watson*, 204 S.W.3d at 417. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id*. We may not simply substitute our judgment for the factfinder's. *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution

4

of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Our deference in this regard safeguards the defendant's right to a trial by jury. *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008). An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

The standards discussed above do not apply when conducting a review of whether evidence sufficiently corroborates accomplice testimony. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008); *see* Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005).

### IV. FACTUAL SUFFICIENCY

In his sole issue, Kavanagh argues that the evidence, when taken as a whole, is factually insufficient to identify him as the perpetrator of the crime because the testimony of the witnesses against him was contradictory, inconsistent, and biased. Kavanagh then argues that the evidence consisted primarily of Howard's accomplice testimony, that her testimony was

insufficiently corroborated, and that, consequently, the evidence is insufficient to support his conviction.[2]

## A. Accomplice Testimony

Howard, Smith, and Nieto lived together in a one-bedroom duplex, along with Nieto's teenage daughter Lozano and several other transients. Howard testified that Kavanagh had begun staying at the duplex two days before they robbed Perez and that Kavanagh had a sexual relationship with Smith.

Howard testified that on March 25, 2007, she, Kavanagh, Nieto, and Smith drew up a plan to rob Perez. They knew that Perez, who was sixty-nine years old, was a drug dealer and, as such, regularly carried significant quantities of drugs. Howard testified that Smith regularly exchanged sex for drugs from Perez. Howard intended to use the cash they planned to steal from Perez to pay the rent, and Kavanagh planned to sell whatever drugs they found on Perez and in his van.

Howard testified that on the morning after they had devised their plan to rob Perez, she was awakened by Kavanagh shouting that "he was tired of this sh*t going on with that n*gga." She got up and saw Perez's van parked in

---

[2] The trial court found Howard to be an accomplice as a matter of law and instructed the jury accordingly. *See, e.g.*, *Herron v. State*, 86 S.W.3d 621, 631 (Tex. Crim. App. 2002).

front of the duplex and saw Perez helping Smith load her belongings into the van. Howard and Kavanagh walked outside and approached Perez. Kavanagh punched Perez one time in the face, breaking his glasses and knocking him to the ground.

Howard testified that Kavanagh rolled Perez over, took his wallet, and threw it at her. Howard then ran back inside because she saw the headlights of an approaching car. She gave Nieto the wallet while Smith brought in other things that she had removed from Perez's van, including drugs, another wallet, a watch, a pocket knife, and a chain. Howard testified that they had found $450 in the two wallets.

Howard explained that when she went outside to throw the unwanted items they had stolen into the trash can, she had noticed that Kavanagh, Perez, and Perez's van were gone. Approximately fifteen minutes later, Kavanagh walked back into the duplex alone, his hands sheathed in bloody socks. Kavanagh said, "I just f*cked that n*gga up. I did that." Kavanagh also told Howard that he had wrecked Perez's van. Kavanagh bragged to a pair of temporary "guests" named Pancho and Elizonda, who laughed and responded, "[T]hat's my boy."

Howard stated that a few hours after the assault and robbery of Perez, she and Nieto had driven to the property management office and had paid both

7

the arrearage on their rent and the amount due for the current and following weeks. They then went to a park and got high on the methamphetamine stolen from Perez's van.

**B. The Law Governing Accomplice-Witness Testimony**

Article 38.14 of the code of criminal procedure provides that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." Tex. Code Crim. Proc. Ann. art. 38.14.

When evaluating the sufficiency of corroboration evidence under the accomplice-witness rule, we "eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime." *Malone*, 253 S.W.3d at 257 (quoting *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001)). To meet the requirements of the rule, the corroborating evidence need not prove the defendant's guilt beyond a reasonable doubt by itself. *Id.*; *Trevino v. State*, 991 S.W.2d 849, 851 (Tex. Crim. App. 1999); *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994). Nor is it necessary for the corroborating evidence to directly link the accused to the commission of the offense. *Cathey v. State*, 992 S.W.2d 460, 462

8

(Tex. Crim. App. 1999), *cert. denied*, 528 U.S. 1082 (2000). Rather, the evidence must simply link the accused in some way to the commission of the crime and show that "rational jurors could conclude that this evidence sufficiently tended to connect [the accused] to the offense." *Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009).

There is no set amount of non-accomplice corroboration evidence that is required for sufficiency purposes; "[e]ach case must be judged on its own facts." *Malone*, 253 S.W.3d at 257 (quoting *Gill*, 873 S.W.2d at 48). Circumstances that are apparently insignificant may constitute sufficient evidence of corroboration. *Trevino*, 991 S.W.2d at 852.

Additionally, "[p]roof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction." *Malone*, 253 S.W.3d at 257 (quoting *Brown v. State*, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984)). But "mere presence alone of a defendant at the scene of a crime is insufficient to corroborate accomplice testimony." *Id.* (quoting *Golden v. State*, 851 S.W.2d 291, 294 (Tex. Crim. App. 1993)).

The accomplice-witness rule is a statutorily imposed sufficiency review and is not derived from federal or state constitutional principles that define the legal and factual sufficiency standards. *Cathey*, 992 S.W.2d at 462–63.

**C. Other Evidence Tends to Connect: The Non-Accomplice Testimony**

During Detective Baggott's interview of Kavanagh after the assault, Kavanagh initially denied his involvement entirely, but he later admitted that he hit Perez. During the recorded interview, Kavanagh described hitting Perez once or twice and knocking him down; Kavanagh said that Perez was "real bloody." Kavanagh explained in the interview that he had covered his hands with socks to keep his knuckles from getting "bruised." He told Detective Baggott that Perez was a "manipulator" who deserved to be beaten and that he definitely wanted to beat up Perez. Kavanagh said that he and Howard had loaded Perez into the back of Perez's van, which Kavanagh then drove a few blocks away. He said that he left the van on the street and walked back to the duplex.

Lozano testified that on the morning of the assault, she was asleep in the living room in the front of the house, where Kavanagh and Smith were also sleeping. She awoke to the sound of Smith crying and saw Kavanagh, Smith, and Howard walking outside of the duplex. Lozano went back to sleep but woke up again to see Smith bringing items into the house. She saw Kavanagh return to the duplex later with "messed up," "cut up and bloody" and heard

10

Kavanagh say that he had "hit that guy" and had "f*cked that N*gga up." She said Kavanagh was carrying bloody socks that he was using to "clean[] his knuckles or something."

Perez testified at trial that prior to the assault and in addition to his job at a manufacturing plant, he had sold drugs to support his own drug habit. He referred to Smith as his "girlfriend" and testified to giving her drugs in exchange for sex. Perez testified that, although his memory of the assault was unclear as to precisely when and where he was hit, he knew that when he awoke he was in his van and was injured. He stated that he clearly remembered that he was attacked at the duplex after Smith had called him to come help her move.

We consider the above non-accomplice testimony discretely, having eliminated from consideration the testimony provided by Kavanagh's accomplice, Howard. *See Malone*, 253 S.W.3d at 257. What remains includes Kavanagh's own admission to police that he had hit Perez once or twice, had participated in the robbery, and had driven Perez in his van to another location. What also remains is testimony that Kavanagh was in the presence of his co-conspirators in the moments before and after the commission of the crime, was present at the scene of the crime, exhibited bloody socks on his hands thereafter, and boasted about having assaulted Perez.

11

Kavanagh's admission tends to connect him to the crime and, taken alone, tends to connect him sufficiently to the offense and corroborates Howard's testimony. *See Simmons*, 282 S.W.3d at 508; *Joubert v. State*, 235 S.W.3d 729, 731 (Tex. Crim. App. 2007), *cert. denied*, 128 S. Ct. 1446 (2008); *see also Farris v. State*, 819 S.W.2d 490, 495 (Tex. Crim. App. 1990) (holding appellant's statement to police that he shot the victims was sufficient corroboration tending to connect him to the offense), *cert. denied*, 503 U.S. 911 (1992), *overruled on other grounds by Riley v. State*, 889 S.W.2d 290, 296 (Tex. Crim. App. 1993); *Jackson v. State*, 516 S.W.2d 167, 171 (Tex. Crim. App. 1974) (holding that a defendant's confession or admission is sufficient to corroborate accomplice testimony in most circumstances). Kavanagh does not deny on appeal that he assaulted Perez, but he argues that someone else inflicted the serious injuries Perez suffered. However, Kavanagh's recorded admission need not establish the exact nature of his participation in the crime to "tend to connect" him to the offense. *See Joubert*, 235 S.W.3d at 731 ("The appellant's [videotaped] admission that he participated in the crime, although he denied being a shooter, is enough to tend to connect him to the offense.").

Moreover, Lozano's testimony that Kavanagh was in and out of the duplex with Howard and Smith at the time of the attack on Perez, and her

12

statements regarding Kavanagh's later return, when he was boasting and wielding visibly bloody socks about his hands, also tends to connect Kavanagh to the crime so as to furnish sufficient corroboration of Howard's testimony. *See Malone*, 253 S.W.3d at 257; *Trevino*, 991 S.W.2d at 852.

In light of Kavanagh's own recorded admission, as well as the deference we give the jury in the weight it assigned to Lozano's testimony and that of the other witnesses, we hold that there is "some evidence tending to connect [Kavanagh] to the offense." *Trevino*, 991 S.W.2d at 852. Consequently, we hold that Howard's testimony was sufficiently corroborated and was properly considered by the jury under the requirements of article 38.14. *See* Tex. Code Crim. Proc. Ann. art. 38.14.

### D. Factually Sufficient Evidence

Kavanagh also argues that the evidence, taken as a whole and inclusive of Howard's accomplice testimony, is factually insufficient to identify him as the perpetrator of the crime because the witnesses' testimony was contradictory, inconsistent, and biased. Having determined that Howard's accomplice-witness testimony was properly corroborated, we now analyze all the evidence—including Howard's testimony—in a neutral light to determine if factually sufficient evidence exists that Kavanagh was the perpetrator. *See Steadman*, 280 S.W.3d at 246.

Kavanagh first asserts that Howard's testimony was inconsistent with her prior statements to the police, Perez's testimony, and other evidence at trial. But even assuming that such inconsistencies exist, the jury was free to believe some or all of the testimony it heard. *See Lancon*, 253 S.W.3d at 706; *see also Fuentes v. State*, 991 S.W.2d 267, 271–72 (Tex. Crim. App.), *cert. denied*, 528 U.S. 1026 (1999) (noting that "to avoid intruding on the jury's role as arbiter of the weight and credibility of the evidence, a factual sufficiency review remains deferential to the jury's verdict"). It was within the purview of the jury to determine the credibility of Howard's testimony, and as the sole judge of the witnesses' credibility, the jury could choose to believe some testimony and disbelieve any or all of the rest. *See Lancon*, 253 S.W.3d at 704.

Kavanagh next argues that Howard was biased in favor of the State because she testified in exchange for a plea bargain that resulted in a substantially-reduced sentence for her part in the crime. However, Kavanagh cross-examined Howard on her reduced sentence, and the jury charge instructed the jury that Howard was an accomplice as a matter of law and that it must believe Howard's testimony to be true before using it as a basis to convict. Howard's credibility was an issue for the jury to decide. *See id.* The jury evidently found her a credible witness, and we must defer to its judgment.

14

*See Johnson*, 23 S.W.3d at 8 (stating that resolution of bias or conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered").

Kavanagh also argues that, while he did assault Perez, Perez could have otherwise been more seriously injured by other people at the duplex who may have had motive to do so, or by "intervening factors like driving off in a stupor and wrecking the van." But contrary to Kavanagh's assertions, the evidence demonstrates that the van was not wrecked, and there was only a small amount of blood in the driver's seat. Moreover, no significant evidence suggests another party assaulted Perez. Kavanagh's admissions related to assaulting Perez, loading his unconscious body into the van, and driving it away are extrajudicial confessions sufficient by themselves to establish his identity as the perpetrator of the crime. *See Emery v. State*, 881 S.W.2d 702, 706 (Tex. Crim. App. 1994) (holding a defendant's extrajudicial confession sufficient to establish his identity where three such confessions in evidence gave certain details of the offense), *cert. denied*, 513 U.S. 1192 (1995). By his own admissions, and through Howard's corroborated testimony of her personal observations, Kavanagh's identity as the individual who assaulted Perez was sufficiently proven.

We have reviewed the evidence in a neutral light, and we find no objective basis in the record for holding that the jury's verdict was clearly wrong or manifestly unjust or that it was contradicted by the great weight and preponderance of the evidence. *See Lancon*, 253 S.W.3d at 704; *Watson*, 204 S.W.3d at 414–15, 417. Rather, the evidence presented at trial was sufficient to support the verdict, and no contrary evidence exists that would render the evidence factually insufficient under the applicable standard of review. *See Lancon*, 253 S.W.3d at 704; *Watson*, 204 S.W.3d at 414–15, 417. Accordingly, we hold that the evidence is factually sufficient to support Kavanagh's conviction. We overrule Kavanagh's sole issue.

## V. CONCLUSION

Having overruled Kavanagh's sole issue, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: WALKER, MCCOY, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: April 1, 2010

16