

## IN THE
## TENTH COURT OF APPEALS

### No. 10-14-00048-CR

**GINNIE FAY ROBERTS,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 413th District Court
### Johnson County, Texas
### Trial Court No. F47843

## MEMORANDUM OPINION

Ginnie Roberts appeals from her convictions for the offenses of possession of a controlled substance with the intent to deliver and for delivery of marihuana to a child. Tex. Health & Safety Code Ann. §§ 481.112(d), 481.122 (West 2010). Roberts complains that the evidence was insufficient to establish that she intentionally or knowingly possessed a controlled substance, was insufficient to establish that she delivered marihuana to a minor, that she received ineffective assistance of counsel, and

that the trial court abused its discretion by admitting a handwritten notebook into evidence because it constituted hearsay.

*Sufficiency of the Evidence*

In her first issue, Roberts complains that the evidence was insufficient for the jury to have determined that Roberts intentionally or knowingly possessed methamphetamine that was found during a search of a residence where Roberts was staying. In her second issue, Roberts complains that the evidence was insufficient for the jury to have found that she delivered marihuana to her daughter because there was no evidence that Roberts had actually transferred marihuana to her daughter. The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson v. Virginia*, 443 U.S. at 326. Further, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

*Possession with Intent to Deliver*

Roberts complains that the evidence was insufficient for the jury to have found that she intentionally or knowingly possessed methamphetamine that was found during a search of a residence where she was staying. To prove unlawful possession of any controlled substance, "the State must prove that (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband." *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *see also* TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West 2010) ("'Possession' means actual care, custody, control, or management.").

Possession is not required to be exclusive. *See Evans*, 202 S.W.3d at 162 n.12. When the defendant is not in exclusive possession of the place where the controlled substance is found, then additional, independent facts and circumstances must affirmatively link the defendant to the substance in such a way that it can reasonably be concluded that the defendant possessed the substance and had knowledge of it. *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005); *Kibble v. State*, 340 S.W.3d 14, 18 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). In other words, the evidence "must establish, to the requisite level of confidence, that the defendant's connection with the [contraband] was more than just fortuitous," which may be established by direct or circumstantial evidence. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995).

Several factors may help to establish a link between the defendant and the contraband, including (1) the defendant's presence when a search is conducted; (2) whether the substance was in plain view; (3) the defendant's proximity to and the accessibility of the substance; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the substance was found; (12) whether the

place where the substance was found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Evans*, 202 S.W.3d at 162 n.12.

Not all of these factors must be proved; rather, it is the cumulative logical force the factors have in proving possession that we must consider. *See James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). Additionally, the absence of some of the factors is not evidence of innocence that must be weighed against the factors that are present. *Id*. Rather, they are used to assess the sufficiency of the evidence linking the defendant to the knowing possession of contraband. *See, e.g., Roberson v. State*, 80 S.W.3d 730, 735-36 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd); *Allen v. State*, 249 S.W.3d 680, 694 n.13 (Tex. App.—Austin 2008, no pet.) (explaining that presence or absence of factors "aid appellate courts in determining the legal sufficiency of the evidence in knowing possession of contraband cases").

*Facts*

Roberts's daughter, C.R., had recently come to live with her mother. C.R. informed a counselor at the school that she was attending that she was concerned for her mother who was using methamphetamine. The counselor made a report to the Department of Family and Protective Services, who sent an investigator to speak with C.R. at her school. C.R. told the investigator that she and her mother were living with her mother's boyfriend, David McKinney, and that her mother had given C.R.

marihuana to smoke and had smoked it with her. The investigator contacted the drug task force in Johnson County to assist her in visiting the home.

Two officers accompanied the investigator to the residence of McKinney. McKinney answered the door and allowed them to come into the residence; however, he asked them to leave when they asked if they could search the residence for controlled substances because he was afraid they would find marihuana. The officers instigated the process of procuring a warrant to search the residence. During this time, no one was allowed in the house. McKinney asked if he could leave and was allowed to leave the premises.

An individual later identified as Wayne Gorman was residing in a camper behind McKinney's home. When the officers initiated contact with Gorman, he gave the officers a false name. While the officers were running a search on the name Gorman had given them, a vehicle with Roberts, C.R., and another female arrived at the residence. Roberts advised one of the officers that Gorman's first name was Waylon but she did not know his last name. The officer asked for and received permission to search Roberts's purse, which contained Gorman's driver's license, but no marihuana or controlled substances. The officer then asked Roberts if drugs would be found in the search of the house, and Roberts admitted that marihuana and maybe methamphetamine would be found in the master bedroom.

At some point, the investigator for the Department spoke with Roberts and asked her whether she knew about C.R.'s marihuana use and if Roberts had provided the marihuana to C.R. Roberts admitted that she had given C.R. marihuana for anxiety. When asked if methamphetamine would be found in the search, Roberts stated that she did not think so. Ultimately, Roberts was allowed to leave the scene, but C.R. remained and was later placed into foster care.

When the residence was searched, officers found a small chest on top of a table in the master bedroom which contained 4.15 grams of methamphetamine, cash, scales, and baggies. The officers located a pink notebook that allegedly contained a ledger of drug sales next to the chest. C.R. identified the notebook as belonging to Roberts and that it contained Robert's handwriting. Another baggie containing .19 grams of methamphetamine was found in a dresser drawer that contained women's undergarments that C.R. identified as her mother's clothing. That dresser also had a framed picture of C.R. on top of it. A meth pipe which C.R. said her mother used to smoke methamphetamine was found on top of a woman's jacket in the bedroom as well.

C.R. testified that she told the counselor of her mother's methamphetamine use because she was afraid for her. C.R. testified that the chest and notebook belonged to her mother and that she had observed her mother selling methamphetamine on more than one occasion and had seen her write in the notebook. C.R. had seen her mother

getting methamphetamine out of the chest and putting money into it. C.R. and her mother were both residing at McKinney's residence and her mother slept in the master bedroom with McKinney.

The pink notebook had a post-it note attached inside the front cover with Roberts's name on it. A latent fingerprint was found inside the notebook that an expert testified was "highly probable" to be Roberts's, but was not that of McKinney or Gorman. Inside the notebook the entries "amount," "cash," "fronts," "balance," and "balance with bag" were handwritten which an officer testified were commonly used terms in drug transactions.

C.R. also testified that her mother gave her marihuana because she did not want C.R. to get it from other sources that might contain other drugs. C.R. stated that she and her mother smoked it together, and she knew it was marihuana by its taste and smell, as well as from seeing pictures of it online.

*Analysis*

Roberts argues that there was insufficient evidence to show that she intentionally or knowingly possessed the methamphetamine that was found in the house and was insufficient to link her to the methamphetamine. However, viewing the record in the light most favorable to the judgment, the evidence showed that C.R. identified the chest containing the methamphetamine as belonging to Roberts, testified that she had observed Roberts using the chest for drug transactions, and knew that the notebook

belonged to Roberts because she saw Roberts in possession of it regularly and saw her mother write in it. The jury had the ability to decide whether it believed some, all, or none of the witnesses' testimony, especially that of C.R., regarding Roberts's possession of the methamphetamine. Using the appropriate factors as set forth in *Evans*, we find that there was a sufficient link between Roberts and the methamphetamine found in the house and the evidence was sufficient for the jury to have found that Roberts intentionally or knowingly possessed the methamphetamine. We overrule issue one.

## *Delivery of Marihuana to a Child*

Roberts complains that the evidence was insufficient for the jury to have found that she delivered marihuana to a child because there was insufficient evidence that any substance given to C.R. was in fact marihuana. Roberts argues that this is because no marihuana was found during the search of Roberts's purse or the residence, no marihuana was admitted into evidence, and no testimony was given by a chemist identifying any substance as marihuana. Roberts argues that the only evidence of delivery of marihuana to a child came from C.R. and C.R. was not qualified to identify any substance she received from her mother as being marihuana.

Roberts also argues that C.R.'s testimony was the only evidence of delivery of marihuana and that the evidence presented to attempt to attack C.R.'s credibility should establish that no rational juror should have found Roberts guilty beyond a reasonable doubt. However, Roberts does not mention the testimony from the Department's

investigator that Roberts admitted to giving marihuana to C.R. to help with her anxiety. The witness's testimony that Roberts said she gave marihuana to C.R. is direct evidence of that fact. *See Hernandez v. State*, 698 S.W.2d 679, 680 (Tex. Crim. App. 1985) (*citing Bright v. State*, 556 S.W.2d 317 (Tex. Crim. App. 1977); *Stein v. State*, 514 S.W.2d 927, 933-934 (Tex. Crim. App. 1974).

Further, as discussed in Roberts's first issue, it was the jury's province to determine the credibility of C.R., and whether to believe some, all, or none of her testimony. *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). C.R. testified that she was familiar with the sight, smell, and taste of marihuana from prior experience. Viewing the evidence is the light most favorable to the judgment, we find that the evidence was sufficient for the jury to have found Roberts guilty of the delivery of marihuana to a child. We overrule issue two.

### Ineffective Assistance of Counsel

In her third issue, Roberts complains that she received ineffective assistance of counsel because her trial counsel agreed to stipulate to the lab reports that indicated that the substance found at the residence was methamphetamine. The State's expert witness was unavailable to testify at trial. In order to prevail on a claim of ineffective assistance of counsel, Roberts must meet the two-pronged test established by the U.S. Supreme Court in *Strickland* that (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). Unless she can prove both prongs, an appellate court must not find counsel's representation to be ineffective. *Lopez*, 343 S.W.3d at 142. In order to satisfy the first prong, Roberts must prove by a preponderance of the evidence that trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms. *Id*. To prove prejudice, Roberts must show that there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different. *Id*.

An appellate court must make a "strong presumption that counsel's performance fell within the wide range of reasonably professional assistance." *Id*. (*quoting Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006)). Claims of ineffective assistance of counsel are generally not successful on direct appeal and are more appropriately urged in a hearing on an application for a writ of habeas corpus. *Id*. at 143 (*citing Bone v. State*, 77 S.W.3d 828, 833 n. 13 (Tex. Crim. App. 2002)). On direct appeal, the record is usually inadequately developed and "cannot adequately reflect the failings of trial counsel" for an appellate court "to fairly evaluate the merits of such a serious allegation." *Id*. (*quoting Bone*, 77 S.W.3d at 833).

Roberts did not file a motion for new trial on the basis of ineffective assistance of counsel and the record is silent as to any potential strategy by her trial counsel as to

why he entered into an agreement with the State to stipulate to the reports. In this case, Roberts did not attempt to deny that the substance found in the residence was in fact methamphetamine, but sought to show that C.R.'s testimony was false in an attempt to distance Roberts from knowledge and possession of the methamphetamine. Nevertheless, the record is silent as to any specific strategy by Roberts's trial counsel and we will not speculate as to trial counsel's strategy. Because Roberts has not met her burden to establish the first prong in *Strickland*, we overrule her third issue.

*Admission of Evidence*

Roberts complains that the trial court abused its discretion in admitting the notebook that was found next to the chest with the majority of the methamphetamine because it constituted hearsay. We review a trial court's decision to admit evidence under an abuse of discretion standard. *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). We will uphold the trial court's ruling if it is "reasonably supported by the record and is correct under any theory of law applicable to the case." *Id*.

Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). A party's own statements, however, are not hearsay. TEX. R. EVID. 801(e)(2)(A); *Trevino v. State*, 991 S.W.2d 849, 853 (Tex. Crim. App. 1999) (Rule of evidence 801(e)(2)(A) "plainly and unequivocally states that a criminal defendant's own statements, when being offered against him, are not hearsay."). A party's own

statements "are admissible on the logic that a party is estopped from challenging the fundamental reliability or trustworthiness of his own statements." *Trevino*, 991 S.W.2d at 853. Additionally, "party admissions, unlike statements against interest, need not be against the interests of the party when made; in order to be admissible, the admission need only be offered as evidence against the party." *Id*.

C.R. testified that she had seen Roberts writing in the notebook and was familiar with her handwriting. C.R. testified that the columns and other writings that an officer testified contained terms commonly associated with the sale of controlled substances were in Roberts's handwriting. The notebook was offered to establish that Roberts was involved in the delivery of methamphetamine prior to the search, and to aid in affirmatively linking Roberts to the methamphetamine discovered during the search. As such, the notebook did not constitute hearsay. We overrule issue four.

*Conclusion*

Having found no reversible error, we affirm the judgment of the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed January 8, 2015
Do not publish
[CRPM]

