

# NUMBER 13-17-00557-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

DAMONTRAY RIVERS,                                                                 **Appellant,**

**v.**

THE STATE OF TEXAS,                                                              **Appellee.**

### On appeal from the 426th District Court
### of Bell County, Texas.

# MEMORANDUM OPINION

### Before Justices Contreras, Longoria, and Hinojosa
### Memorandum Opinion by Justice Longoria

Appellant Damontray Rivers was convicted of one count of felony murder as a party and one count of engaging in organized criminal activity, both first-degree felonies. *See* TEX. PENAL CODE ANN. §§ 19.02(b)(3), 71.02 (West, Westlaw through 2017 1st C.S.). The jury assessed punishment at a sentence of thirty years' imprisonment and a fine of

$1,100.00 on each count. Rivers raises two issues: (1) he received ineffective assistance of counsel and (2) there was insufficient evidence to convict him for felony murder. We affirm.

## I. BACKGROUND[1]

In December of 2014, Damon Johnson was fatally shot on Terrace Street in Temple, Texas, in a neighborhood known as Terra Block. The State presented evidence alleging that the murder occurred while two men were attempting to rob Johnson.

The State charged Rivers with one count of felony murder as a party and one count of engaging in organized criminal activity. *See id.* The State's theory of the case was that Rivers and Leray Wheelock were members of the street gang "Killers With Aggression" (KWA) and that they were attempting to rob Johnson because he had recently shown that he was carrying $1,100.00 and he was selling drugs in the neighborhood which their street gang "controlled."

At trial, the State presented evidence that KWA had been known to police and the public as a violent street gang and that Rivers was involved and associated with KWA. A witness, Shelby Vineyard, a resident of Terrace Street, placed Rivers in the vicinity of the scene running from the shooting moments after it occurred. Vineyard testified that Rivers ran toward her looking for Wheelock and when she indicated where Wheelock had run to, Rivers quickly followed. Vineyard also testified that Rivers approached her the next day about what she had seen the prior evening and she felt threatened to stay quiet

---

[1] Pursuant to a docket-equalization order issued by the Supreme Court of Texas, this case was transferred to this Court from the Third Court of Appeals in Austin. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2017 1st C.S.).

2

about what she had seen after the shooting.

The State also presented other evidence that connected Rivers to the shooting. Testimony from several witnesses such as Cody Villareal, Tyrell Luster, and Kadijah Veneable also placed Rivers at the shooting of Johnson. Each of these witnesses gave similar statements indicating that Wheelock had confessed to shooting Johnson while Wheelock and Rivers were attempting to rob him.

Rivers questioned the credibility of the State's witnesses, namely Vineyard, Villareal, Luster and Veneable. Rivers' cross-examination of the witnesses showed that no one saw him commit the crime alleged, nor did any witness ever hear a confession from him, only from Wheelock. He further argued that the State's theory and evidence did not align with the testimony of the witnesses.

Rivers was convicted and sentenced to thirty years' confinement and a fine of $1,100.00 on each of the counts. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

By his first issue, Rivers contends that his trial counsel was ineffective by failing to object to the admission of a witness's prior statement being read into evidence.

## A. Standard of Review and Applicable Law

We evaluate claims of ineffective assistance of counsel under the standard articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To obtain reversal under *Strickland*, a defendant must show both (1) that his counsel performed deficiently and (2) that the deficient performance prejudiced the defendant's case. *Id.* Deficient performance means that counsel's errors were so

3

serious that he was not functioning "within the range of competence demanded of attorneys in criminal cases as reflected by prevailing professional norms." *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). Prejudice means that there is a "reasonable probability" that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Ex parte Napper*, 322 S.W.3d 202, 248 (Tex. Crim. App. 2010) (internal quotation marks omitted).

We indulge a strong presumption that counsel's challenged actions were not deficient but the result of sound trial strategy. *Nava*, 415 S.W.3d at 307–08. The appellant has the burden to show the contrary by the preponderance of the evidence. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). If the record does not contain counsel's explanation for his challenged actions, we will not find deficient performance unless the challenged conduct "was so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (internal quotation marks omitted). In other words, we will "assume a strategic motivation if any can possibly be imagined." *Ex parte Miller*, 330 S.W.3d 610, 616 n. 9 (Tex. Crim. App. 2009). Thus, direct appeal is usually an inadequate tool for claims of ineffective assistance because the record has not been developed sufficiently to make such findings. *See Menefield v. State*, 363 S.W.3d 591. 592–93 (Tex. Crim. App. 2012).

Regarding the prejudice prong, a "reasonable probability" is one that is sufficient to undermine confidence in the outcome. *Id.* A "reasonable probability" is not the same as a preponderance of the evidence because "[t]he result of a proceeding can be

4

rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Strickland*, 466 U.S. at 694; *Ex parte Saenz*, 491 S.W.3d 819, 826 (Tex. Crim. App. 2016). To prevail on a claim of ineffective assistance connected with the absence of an objection, it must be shown, as a threshold matter, that the subject evidence was inadmissible. *See Ex parte Jimenez*, 364 S.W.3d 866 (Tex. Crim. App. 2012).

## B.    Analysis

Rivers never filed a motion for new trial and his trial counsel was never afforded the opportunity to explain his actions; courts are hesitant to declare an attorney's performance as deficient until he has been afforded an opportunity to explain himself. *See Menefield*, 363 S.W.3d at 592.    Rivers argues his counsel failed to raise an improper impeachment objection during the testimony of Cody Villareal.    According to Rivers, although his attorney objected to the complained-of testimony as hearsay, he should have objected to the testimony as improper impeachment.    The trial court judge overruled Rivers' trial counsel's objection.    Rivers now argues that the complained-of statement was improper impeachment testimony and, even though it was allowed by the trial court, a limiting instruction should have been requested by counsel.    The State contends the statement was not used to impeach Villareal, but rather was admitted as an opposing party statement.    *See* TEX. R. EVID. 801(e)(2) (providing that an opposing party's statement is not hearsay if it is made by the party in an individual or representative capacity).    During his testimony, Villareal stated he did not recall giving a statement to the police that incriminated Rivers.    Upon additional questioning, the following exchange

5

took place between the prosecutor and Villareal:

Prosecutor:       Sir, this paragraph on page 4, just have you read that to yourself and see if you can recall it. Helps your memory.

Villareal:        (Complied.) I don't remember the actual conversation. I really don't remember the actual conversation.

Prosecutor:       Did you provide a written statement to the Temple Police Department about the conversation?

Villareal:        Yeah, that was a long time ago.

Prosecutor:       All right. Well, I'm giving you that so you can read it to help you refresh your memory.

Villareal:        I still don't remember it happening.

. . . .

Prosecutor:       Was everything true when you wrote this statement?

Villareal:        I don't know how to answer that.

Prosecutor:       Well, it's a yes or no. Was it true what you put in your statement and signed and swore that it was true?

Villareal:.       Yes.

Prosecutor:       And isn't it true, you stated what [Rivers] told you in the car that day, right?

Villareal:        I don't remember it happening, man, I really don't.

Prosecutor:       You were the one who gave this statement to the Temple Police Department, correct?

Villareal:        Yes.

Prosecutor:       You swore it was all true when you gave it, correct?

Villareal:        Yes.

6

. . . .

Prosecutor: What did you tell the Temple Police Department regarding [Rivers] and what he told you?

Defense Counsel: Your Honor, I'm going to object again. We've been through this backwards and forwards. The gentleman said he doesn't remember, he can't give that answer.

The Court: Overruled.

Defense Counsel: Yes, ma'am.

Prosecutor: What did you tell them?

Villareal: I guess I told them what was in the statement, I just don't remember the stuff happening.

Prosecutor: Judge, may I approach.

The Court: You may.

Prosecutor: Read what's in the statement regarding what he told you. That paragraph.

Villareal: (Complied.) Read it out loud?

Defense Counsel: I'm going to object, Your Honor. It's a hearsay statement.

Prosecutor: Judge, it's not hearsay. It's made by the defendant.

The Court: I'll overrule the objection.

From the record, it is clear that Rivers' counsel raised his objection to the court regarding the complained-of testimony and it was overruled by the trial court. The State during the trial argued that the statement was not hearsay because it was a statement "made by the defendant." Thus, the trial court overruled the objection on the basis that it was admissible evidence and not inadmissible hearsay. "Out-of-court statements of a

party differ from the out-of-court statements of non-parties, and raise different evidentiary concerns." *Trevino v. State*, 991 S.W.2d 849, 853 (Tex. Crim. App. 1999). A party's own statement inculpating himself is admissible as non-hearsay "on the logic that a party is estopped from challenging the fundamental reliability or trustworthiness of his own statements." *Id.* Villareal's statement explains how he, Rivers, and David Williams, a mutual friend of Villareal and Rivers, were all in the car together at the time the statement was given. Villareal's statement given to the police and read to the jury during his testimony stated, in part: "I listened when Little D told David that Leray popped – shot the victim as he was struggling with Little D during the robbery." Evidence elicited during trial explained that Rivers was known as "Little D." Villareal's testimony was that he heard Rivers make an inculpatory statement and relayed that information to the police in a signed statement. To the extent Rivers is arguing that his counsel should have objected under rule 613(a), regarding the introduction of a witness's prior inconsistent statement, that rule doesn't apply to statements by an opposing party. TEX. R. EVID. 613(a)(5).

We conclude that Villareal's testimony regarding Rivers' statement was permissible under rule 801(e)(2)(A). TEX. R. EVID. 801(e)(2); *see Strong v. State*, 138 S.W.3d 549, 553–54 (Tex. App.—Corpus Christi 2004, no pet.). Therefore, any objection as "improper impeachment" would have been overruled. Accordingly, we overrule Rivers' first issue.

### III. SUFFICIENCY OF THE EVIDENCE

In his second issue, Rivers argues that there was insufficient evidence to support

8

his conviction for felony murder. Specifically, he argues that without the statement of Villareal, there would be no direct evidence against him.

## A. Standard of Review and Applicable Law

In order to determine if the evidence is legally sufficient in a criminal case, the appellate court reviews all of the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 905 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)); *see also Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014). This standard tasks the factfinder, the jury in this case, with resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from it. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). The legal-sufficiency standard upheld in *Jackson v. Virginia* is the only standard that should be applied in criminal appeals; thus, we do not perform factual sufficiency reviews in criminal cases. *See Brooks*, 323 S.W.3d at 894. Our role on appeal is limited to determining whether the necessary inferences drawn by the jury are reasonable based upon the cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Id.* If the record supports conflicting inferences, we presume that the jury resolved the conflict in favor of its verdict and defer to that determination. *Murray*, 457 S.W.3d at 448–49; *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014).

We measure the sufficiency of the evidence against the essential elements of the offense defined by the hypothetically correct jury charge for the case. *Anderson v. State*,

416 S.W.3d 884, 889 (Tex. Crim. App. 2013). The hypothetically correct jury charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict its theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). The hypothetically correct jury charge for this case would state that Rivers committed the offense of felony murder if he committed or attempted to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he committed or attempted to commit an act clearly dangerous to human life that caused the death of an individual. *See* TEX. PENAL CODE ANN. § 19.02(b)(3). A hypothetically correct charge would also include an instruction on the law of parties. Under the law of parties, a person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* § 7.02(a)(2).

Evidence is sufficient to convict the defendant under the law of parties where he is physically present at the commission of the offense, and encourages the commission of the offense either by words or other agreement. *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985); *Tarpley v. State*, 565 S.W.2d 525, 529 (Tex. Crim. App. 1978). To convict someone as a party to an offense, the evidence must show that at the time of the offense the parties were acting together, each doing some part of the execution of the common purpose. *Cordova*, 698 S.W.2d at 111; *Brooks v. State*, 580 S.W.2d 825, 825

10

(Tex. Crim. App. 1979).

As an appellate court reviewing a cold record after the jury has evaluated the evidence and made its finding, our task is to consider all the record evidence, direct and circumstantial, in the light most favorable to the jury's verdict, and to determine whether, based on that evidence, any rational jury could have found all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319–320, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Geesa v. State,* 820 S.W.2d 154, 158–159 (Tex. Crim. App. 1991). In determining sufficiency of the evidence, we consider all the evidence, admissible and inadmissible. *Gardner v. State,* 699 S.W.2d 831, 835 (Tex. Crim. App. 1985); *see Johnson v. State*, 967 S.W.2d 410, 411–12 (Tex. Crim. App. 1998)

**B.      Analysis**

Rivers contends that the statement admitted through the testimony of Villareal regarding his alleged admission to his involvement in the robbery and shooting of Johnson was the only evidence that could be considered as direct evidence of his acting as a party to the offense alleged. However, we consider the statement in our analysis, regardless of the admissibility of the statement. *See Gardner*, 699 S.W.2d at 835.

Rivers does not claim a lack of evidence on any particular element; rather, he broadly claims that the testimony of the State's witnesses was not direct evidence against him and therefore not evidence of guilt. We disagree. The State presented evidence from several witnesses regarding the events that took place leading to the murder of Damon Johnson, including Vineyard placing Rivers at the scene at the time of the murder.

11

Specifically, Vineyard's testimony was that just moments after she heard a gunshot, Rivers ran toward her from the direction of Johnson's house trying to find Wheelock, and then ran in the same direction Wheelock had. Additionally, both Luster and Veneable testified that they heard directly from Wheelock that Rivers and Johnson were in a struggle during the attempted robbery and Wheelock shot and killed Johnson. The testimony of these three witnesses, coupled with Villareal's testimony that he heard directly from Rivers as to Rivers' involvement in the shooting of Johnson, show that there was evidence presented that Rivers was attempting to rob Johnson and during that robbery, Wheelock shot and killed Johnson.

During trial, Rivers attacked the credibility of the witnesses and directed the jury to consider the motive of each witness for testifying. However, the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899. Furthermore, direct and circumstantial evidence are treated equally. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). A conclusion of guilt can rest on the combined and cumulative force of all the incriminating circumstances. *Hernandez v. State*, 190 S.W.3d 856, 864 (Tex. App.—Corpus Christi 2006, no pet.).

Therefore, viewing all of the evidence in the light most favorable to the verdict, we conclude that a reasonable factfinder could find beyond a reasonable doubt that Rivers committed the offense of felony murder by the law of parties. *See Temple*, 390 S.W.3d

12

at 360; *Brooks,* 323 S.W.3d at 894.   We overrule appellant's second issue.

## IV.   CONCLUSION

We affirm the trial court's judgment.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
21st day of June, 2018.